UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| BBK TOBACCO & FOODS, LLP,<br><br>                    Plaintiff,<br>v.<br>AIMS GROUP USA CORPORATION, et al.<br><br>                    Defendant. | Case No.: 2:22-cv-01648-GMN-BNW<br><br>**ORDER GRANTING DEFAULT JUDGMENT AND PERMANENT INJUNCTION** |

Before the Court is Plaintiff BBK Tobacco & Foods's Motions for Default Judgment and Permanent Injunction. ECF Nos. 88, 92.  No response has been filed.  For the reasons discussed below, the Court **GRANTS** Plaintiff's Motions for Default Judgment and Permanent Injunction.

I.    BACKGROUND

On February 22, 2023, Plaintiff BBK filed a First Amended Complaint ("FAC"). ECF No. 45.  The FAC alleges that BBK produces and sells smoking products and accessories, including its RAW®-brand rolling papers. *Id.* at ¶ 2. BBK alleges that for its RAW™-brand products, it develops and uses distinctive trademarks and trade dresses registered with the U.S. Patent and Trademark Office ("PTO") and copyrighted designs registered with the U.S. Copyright Office. *Id.* at ¶ 3. BBK uses—on packaging and in advertising for RAW®-brand products—"THE NATURAL WAY TO ROLL" slogan, which BBK has used as a trademark for its products since 2007 and which the PTO registered as a BBK trademark for "cigarette rolling papers" in 2010 (the "RAW®-Brand Product Slogan"). *Id.* at ¶ 4. BBK uses, and has used since 2017, the RAW Cone Bro™ mark for glass mouthpieces. *Id.* at ¶ 5. BBK has also filed an application for PTO registration of the RAW Cone Bro™ mark. *Id.*

According to BBK, Defendants misappropriated BBK's RAW®-brand packaging designs, RAW®-Brand Product Slogan, and RAW Cone Bro™ trademark by selling (without BBK's permission) certain rolling papers and pre-rolled cones. *Id.* at ¶ 6. It is also alleged that Defendants' packaging infringes BBK's copyright in designs for RAW™-brand product packaging, mimics the overall commercial impression of the RAW™-brand packaging design, and uses BBK's RAW®-Brand Product Slogan and "BroCone" name. *Id.* BBK also alleges that Defendants include false statements about both the origin and characteristics of the "BroCone" products on their "BroCone" product packaging. *Id.* at ¶ 212. In addition, according to the FAC, Defendants' misuse of BBK's intellectual property and Defendants' false advertising is deceiving and confusing consumers and is causing harm—including irreparable harm and damages—to BBK. *Id.* at ¶¶ 9, 294, 297.

In turn, BBK alleges claims against all Defendants, including Defendant Florida One, for: (1) Federal Trademark Infringemnet under 15 U.S.C. § 1114(1)(a), Lanham Act § 32(1); (2) Trade Dress Infringement under 15 U.S.C. § 1114(1)(a), Lanham Act § 32(1); (3) False Designation of Origin and Unfair Competition under 15 U.S.C. § 1125(a)(1)(A), Lanham Act § 43(a); (4) False Advertising under 15 U.S.C. § 1125(a)(1)(B), Lanham Act § 43(a); (5) Violation of the Nevada Deceptive Trade Practices Act under NRS 41.600(e) and NRS 598.0915; (6) Nevada common law Trademark Infringement and Unfair Competition; and (7) Copyright Infringement under 17 U.S.C. § 501 *et seq. Id.* at ¶¶ 229–391. Plaintiff sought a preliminary and permanent injunction prohibiting Defendants from engaging in this conduct in the future, a mandatory injunction for the destruction of the alleged infringing products, damages, attorneys' fees, and costs. *Id.* at pp. 58–60.

A summons was issued to Defendant Florida One and returned as executed on March 28, 2023. ECF No. 54. Defendant Florida One did not answer or otherwise respond to Plaintiff's complaint. Accordingly, on April 24, 2023, Plaintiff moved for entry of clerk's default. ECF No. 57. The clerk granted this request two days later. ECF No. 58. Defendant Florida One has not moved to set aside the entry of default, responded to the First Amended Complaint, or

otherwise appeared. As a result, Plaintiff now moves for default judgment against Defendant Florida One and seeks a permanent injunction. ECF Nos. 88, 92.

Courts must examine both subject matter and personal jurisdiction when default judgment is sought against a non-appearing party. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). This Court has original subject matter jurisdiction over the federal law claims under 28 U.S.C. §§ 1331, 1332, 1338, and 2201 and 15 U.S.C. § 1121. Furthermore, diversity jurisdiction exists over all claims (ECF No. 45 at ¶¶ 10–16), as well as supplemental jurisdiction over the state law claims under 28 U.S.C. §1367(a). Venue is proper in this Court pursuant to, *inter alia*, 28 U.S.C. §§ 1391 and 1400. This Court may properly exercise personal jurisdiction over Defendant Florida One because it is alleged that Florida One has carried out business activities in Nevada, including the sale of "BroCone" products. ECF No. 45 at ¶ 23. In addition, BBK further alleges that Defendant Florida One's actions have caused injury to BBK in Nevada. *Id.* at ¶ 17; *see also Prescott v. Slide Fire Solutions, LP*, 341 F. Supp. 3d 1175, 1183–85 (D. Nev. 2018) (holding out-of-state defendant subject to personal jurisdiction based on sale of product through Nevada retailers, promotion of product at trade shows, and online sales); *Robert Bosch LLC v. ADM 21 Co., Ltd.*, No. 2:10-cv-01930-RLF-LRL, 2011 WL 2619335, *4–6 (D. Nev. Jul. 1, 2011) (holding personal jurisdiction and venue proper based on trade-show attendance and importation and marketing of infringing products).

**II.   LEGAL STANDARD**

Obtaining default judgment is a two-step process governed by Rule 55 of the Federal Rules of Civil Procedure. *See Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986). First, the moving party must seek an entry of default from the clerk of court. FED R. CIV. P. 55(a). Entry of default is only appropriate when a party "has failed to plead or otherwise defend." *Id.* Additionally, the Rule 55(a) advisory note indicates that it is inappropriate to enter a default against a party who has indicated their intent to defend. *Id.* After the clerk enters the default, a party must then separately seek entry of default judgment from the court in accordance with Rule 55(b). Upon entry of a clerk's default, the court takes the factual allegations in the

complaint as true, except those relating to the amount of damages. *See TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (per curiam).

In determining whether to grant default judgment, courts are guided by the following seven *Eitel* factors: (1) the possibility of prejudice to the plaintiff, (2) the merits of the plaintiff's substantive claims, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong public policy favoring decisions on the merits. *Eitel*, 782 F.2d at 1471–72.

## III.  DISCUSSION

As an initial matter, Plaintiff has met the first step of the two-step process for obtaining default judgment. Pursuant to Rule 55(a), the Clerk of the Court correctly entered default against Defendants because they have not appeared in the case. *See* Clerk's Entry of Default, ECF No. 58. Thus, the Court, in its discretion, may order a default judgment after a balance of the *Eitel* factors.

### A.  Possibility of Prejudice to the Plaintiff

The first *Eitel* factor the Court considers is the possibility of prejudice to the plaintiff. A defendant's failure to respond or otherwise appear in a case "prejudices a plaintiff's ability to pursue its claims on the merits." *See, e.g.*, *Nationstar Mortg. LLC v. Operture, Inc.*, No: 2:17-cv-03056-GMN-PAL, 2019 WL 1027990, at *2 (D. Nev. Mar. 4, 2019); *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("If Plaintiffs' motion for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery."). BBK will also suffer prejudice with no recourse to prevent further infringement. *See Levi Strauss & Co. v. Toyo Enter. Co., Ltd.*, 665 F. Supp. 2d 1084, 1095 (N.D. Cal. 2009) (finding factor satisfied where trademark plaintiff alleged inability "to prevent continued infringement and dilution"). As a result, this factor weights in favor of default judgment.

B.  **Plaintiff's Substantive Claims and the Sufficiency of the Complaint**

The second and third factors focus on the merits of Plaintiff's substantive claims and the sufficiency of the complaint. *See Eitel*, 782 F.2d at 1471.  These factors, often analyzed together, require courts to determine whether a plaintiff has "state[d] a claim on which [it] may recover." *PepsiCo*, 238 F. Supp. 2d at 1175.  Courts often consider these factors "the most important." *Vietnam Reform Party v. Viet Tan – Vietnam Reform Party*, 416 F. Supp. 3d 948, 962 (N.D. Cal. 2019).  If a district court has "serious reservations" about the merits of a plaintiff's claims based on the pleadings, these factors weigh in favor of denying default judgment. *See Eitel*, 782 F.2d at 1472.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).  "Where the allegations in a complaint are not 'well-pleaded,' liability is not established by virtue of the defendant's default and default judgment should not be entered." *See Adobe Sys., Inc. v. Tilley*, No. C09-1085 PJH, 2010 WL 309249, at *3 (N.D. Cal. Jan. 19, 2010).  As explained in detail below, these two factors weigh in favor of default judgment as to all claims alleged in the FAC.

*1.  Trademark Infringement*

To prevail on a trademark infringement claim, a plaintiff must show: "(1) it has a valid, protectable mark; and (2) the defendant's use of the mark is likely to cause consumer confusion." *OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.*, 897 F.3d 1008, 1022 (9th Cir. 2018).  Courts use several factors to determine whether there will be a likelihood of confusion, including: the strength of the mark, the proximity of the goods, the similarity of the marks, the evidence of actual confusion, the marketing channels used, the type of goods and degree of care likely to be exercised by the purchaser, the defendant's intent in selecting the mark, and the likelihood of expansion of product lines. *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979), *abrogated in part on other grounds by Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792 (9th Cir. 2003).

Plaintiff claims that it is the owner of the federally registered trademarks and attached the U.S. Trademark Registration Certificates to its Complaint. ECF No. 45 at ¶¶ 31, 32, 36, 64–66, 74, Ex. B and C.

The FAC alleges Defendants' use of these marks is likely to cause confusion. ECF No. 45 at ¶¶ 159, 191, 208, 233, 256, 278, 313.  To begin, BBK alleges that it owns, and has used since 2017, the RAW Cone Bro™ name as a trademark for a RAW™-brand smoking product. *Id.* at ¶¶ 89–92.  In addition, BBK alleges that it owns "THE NATURAL WAY TO ROLL" slogan (the "RAW®-Brand Product Slogan"), which has been used since 2007 and was registered with the PTO as a trademark for use with BBK rolling papers since 2011. *Id.* at ¶¶ 104–8.  Years later, Defendant Florida One began selling rolling papers and cones using the name "BroCone" on packaging and advertising of the products. *Id.* at ¶ 194.  Defendant Florida One's "BroCone" rolling-paper products copy verbatim and misuse the RAW®-Brand Product Slogan. *Id.* at ¶¶ 169–81.  In sum, Defendant Florida One, which is in direct competition with BBK (*id.* at ¶ 122), sells "BroCone" rolling papers and cones identical to the RAW™-Brand Products, using a product name and slogan in packaging designs that are identical or nearly identical to the RAW Cone Bro™ name, the RAW®-Brand Product Slogan, and the RAW™-Brand Trade Dress. *See id.* at ¶¶ 161–62, 176, 180, 181, 237, 361, 371, 372, 375.  The marketing and sales of the "BroCone" Products using the "BroCone" brand occur in some of the same marketing and sales locations as the RAW™-Brand products that use BBK's RAW Cone Bro™ name, RAW®-Brand Product Slogan, and RAW™-Brand Trade Dress. *Id.* at ¶¶ 188, 205.  In addition, Defendants' use of the "BroCone" name, the "BroCone" Package and Box Graphic Designs, and the slogan "The NATURAL WAY TO ROLL" have actually confused and/or deceived consumers, diverting sales from BBK's RAW™-Branded Products to Defendants' competing "BroCone" products. *Id.* at ¶¶ 233, 256, 261–63, 28–86, 313, 319, 321, 338.

These allegations sufficiently plead the elements of trademark infringement, but the Complaint does not specify in what ways each Defendant is alleged to have infringed on Plaintiffs' trademarks.  Courts in the Ninth Circuit have found pleading to be insufficient when a

plaintiff sues multiple defendants without specifying which defendant is liable for which cause of action. *See, e.g.*, *Dougherty v. Bank of Am., N.A.*, 177 F. Supp. 3d 1230, 1253 (E.D. Cal. 2016) (stating that when defendants are referenced collectively under "cause of action" in the complaint, pleading must detail adequate facts against each defendant); *Friedman v. Zimmer*, No. CV 15–502 GHK, 2015 WL 6164787, at *2 (C.D. Cal. July 10, 2015) (noting that lumping defendants together may violate Rule 8 when "the pleadings are largely incomprehensible").

Here, though the Complaint does not specify exactly how each Defendant engaged in trademark infringement, the FAC's factual allegations allow the Court to draw a reasonable inference that Defendant Florida One is liable for the misconduct alleged. *See Reflex Media, Inc. v. Richard Easton Ltd.*, No. 2:20-cv-00051-GMN-EJY, 2023 WL 6119950 at * 5 (D. Nev. Sept. 15, 2023) (finding reasonable inferences could be drawn despite lack of specificity in the complaint). This is based on Plaintiff's allegation that Defendant Florida One sells "BroCone" products through its collaboration with NEPA and AIMS (both of whom sell "BroCone" products through attendance at tradeshows and through e-commerce). ECF No. 45 at ¶¶ 20–23. In addition, Plaintiff maintains that Defendant Florida One has control over AIMS's ability to sell, transfer, or otherwise encumber the "BroCone" brand. ECF No. 45 at ¶ 23. Lastly, Plaintiff alleges that Defendant Florida One has a security interest in NEPA's inventory of products, purported intellectual property rights for the brand "BroCone," and all proceeds of the inventory and intellectual property and rights to such claims. *Id.*

### 2. Trade Dress Infringement

A claim for trade dress infringement also requires the plaintiff's ownership of distinctive trade dress and a likelihood of confusion, but it requires the additional elements that the claimed trade dress be nonfunctional. *See Talking Rain Beverage Co. Inc. v. S. Beach Beverage Co.*, 349 F.3d 601, 603 (9th Cir. 2003) (citing elements of proof as: "(1) non-functionality, (2) distinctiveness, and (3) likelihood of confusion").

BBK alleges that it uses a distinctive trade dress for the packaging of RAW®-brand rolling paper and RAW™-brand pre-rolled cones. ECF No. 45 at ¶¶ 34–46, 63–66, Ex. B. The

FAC describes that trade dress extensively and specifically and defines those designs as the "RAW™- Brand Trade Dress." *Id.* at ¶¶ 28–92. The RAW™-Brand Trade Dress is inherently distinctive (*id.* at ¶ 52) and has acquired distinctiveness through nearly two decades of continuous and extensive use in commerce as an indicator of the source of RAW™-Brand Products to the consuming public. *Id.* at ¶¶ 78–80. The RAW™-Brand Trade Dress serves as a symbol of the quality of the products packaged in the RAW™-Brand Trade Dress and has garnered significant goodwill in the marketplace for RAW™-Brand Products. *Id.* at ¶ 88. BBK has registered some of the RAW™-Brand Trade Dresses with the PTO. *Id.* at ¶ 36.

According to BBK, Defendants are knowingly promoting and selling "BroCone" products using packaging designs (the "'BroCone' Package and Box Graphic Designs") similar in visual appearance to the designs of the RAW™-Brand Trade Dress. *Id.* at ¶¶ 140–42, 154–58, 194–204, and Ex. F. The combined textual and graphic elements of the BroCone Package and Box Graphic Designs create the same overall visual impression as the RAW™-Brand Trade Dress, such that consumers are confused. *Id.* at ¶ 261. The same analysis above regarding likelihood of confusion as to the trademark infringement claim applies here as well.

In addition, BBK's RAW™-Brand Trade Dress is nonfunctional (ECF No. 45 at ¶ 83) and distinctive (*id.* at ¶¶ 77–80).

Here, though the Complaint does not specify exactly how each Defendant engaged in trade dress infringement, the First Amended Complaint's factual allegations allow the Court to draw a reasonable inference that Defendant Florida One is liable for the misconduct alleged. *See supra* Section III.B.1.

### 3. False Designation of Origin and Unfair Competition

To prevail on a claim of false association or false designation of origin, a plaintiff must show that "(1) defendant uses a designation (any word, term, name, device, or any combination thereof) or false designation of origin; (2) the use was in interstate commerce; (3) the use was in connection with goods or services; (4) the designation or false designation is likely to cause confusion, mistake, or deception as to (a) the affiliation, connection, or association of defendant

with another person, or (b) as to the origin, sponsorship, or approval of defendant's goods, services, or commercial activities by another person; and (5) the plaintiff has been or is likely to be damaged by these acts." *United Tactical Sys., LLC v. Real Action Paintball, Inc.*, 143 F. Supp. 3d 982, 1015 (N.D. Cal. 2015).

As alleged in the FAC, Defendants' use of the "BroCone" brand name, the "BroCone" Package and Box Graphic Designs, and the slogan "THE NATURAL WAY TO ROLL" on packaging and advertising for, and/or to identify the "BroCone" Products, including use on packaging and instore displays, constitutes a false designation of origin that has caused, or is likely to cause, confusion, mistake, and deception as to the affiliation, connection, or association between the "BroCone" Products and the RAW™-Brand Products and commercial activities of BBK. ECF No. 45 at ¶ 278. Further, the use was in interstate commerce. *Id.* at ¶ 312. Moreover, the use injures BBK's commercial interest in its reputation and reduces BBK's sales of its products. *Id.* at ¶ 281–87.

Here, though the Complaint does not specify how each Defendant engaged in False Designation of Origin and Unfair Trade, the First Amended Complaint's factual allegations allow the Court to draw a reasonable inference that Defendant Florida One is liable for the misconduct alleged. *See supra* Section III.B.1.

### 4. False Advertising

To establish a false advertising claim under Section 43(a) of the Lanham Act, a plaintiff must prove "that the defendant made a material false statement of fact in a commercial advertisement and that the false statement deceived or had a tendency to deceive a substantial segment of its audience." *Muzikowski v. Paramount Pictures Corp.*, 477 F.3d 899, 907 (7th Cir. 2007). A plaintiff asserting a false advertising claim must allege that its injury (1) is within the "zone of interests" protected by the Lanham Act, and (2) was proximately caused by defendant's violation of the Lanham Act. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127–30 (2014). "[T]o come within the zone of interests in a suit for false advertising under § 1125(a), a plaintiff must allege an injury to a commercial interest in reputation or sales." *Id.* at

131–32. To demonstrate proximate cause, "a plaintiff suing under § 1125(a) ordinarily must show economic or reputation injury flowing directly from the deception wrought by the defendant's advertising, and that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Id.* at 133.

The First Amended Complaint alleges that Defendant Florida One made false statements of fact about "BroCone" products in a commercial advertisement. ECF No. 45 at ¶¶ 217–19, 225–27, 292–95. In addition, it alleges that these false statements deceived or had a tendency to deceive a substantial segment of its audience. *Id.* at ¶¶ 228, 294–95. It also alleges that the deception is material. *Id.* In addition, it claims that the false statements entered interstate commerce and that BBK has been or is likely to be injured as a result of the false statements, either by Defendants' diversion of sales from BBK to Defendants or by lessening of the goodwill associated with BBK's products. *Id.* at ¶¶ 211–28, 296–97. Lastly, it alleges that these statements have caused substantial and irreparable damage and injury to BBK. *Id.* at ¶¶ 45, 297, 299–300, 301, 303–05.

Here, though the Complaint does not specify how each Defendant engaged in false advertising, the First Amended Complaint's factual allegations allow the Court to draw a reasonable inference that Defendant Florida One is liable for the misconduct alleged. *See supra* Section III.B.1.

### 5. Nevada Deceptive Trade Practices Act

> Under Nevada's Deceptive Trade Practices Act ("DTPA"), a defendant is liable if it: Knowingly passes off goods or services for sale or lease as those of another person. . . .[u]ses deceptive representations or designations of geographic origin in connection with goods or services for sale or lease . . . makes a false representation as to the characteristics, ingredients, uses, benefits, alterations or quantities of goods or services for sale or lease or a false representation as to the sponsorship, approval, status, affiliation, or connection of a person therewith . . . [or] [r]epresents that goods or services for sale or lease are of a particular standard, quality or grade, or that such goods are of a particular style or model, if he or she knows or should know that they are of another standard, quality, grade, style or model.

NEV. REV. STAT. § 598.0915(1), (4), (5), and (7). The DTPA provides that "[e]vidence that a person has engaged in a deceptive trade practice is prima facie evidence of intent to injure competitors and to destroy or substantially lessen competition." *Id.* § 598.0953(1). Thus, "a business shown to be engaged in deceptive trade practices is presumed to intend for those practices to injure its competitors and destroy competition." *S. Serv. Corp. v. Excel Bldg. Servs., Inc.*, 617 F. Supp. 2d 1097, 1099 (D. Nev. 2007).

BBK's FAC alleges that Defendants acted with the express intent of deceiving consumers and injuring BBK. ECF No. 45 at ¶¶ 334–35, 337. Furthermore, it alleges that Defendant Florida One's false statements, and the similarity between the "BroCone" name, the "BroCone" Package and Box Graphic Designs, and the use of "THE NATURAL WAY TO ROLL" slogan, on the one hand, and BBK's RAW Cone Bro™ name, RAW™-Brand Trade Dress, RAW®-Brand Product Slogan, on the other hand, is so great that consumers have been deceived and confused and have, as a result, withheld trade from BBK. *Id.* at ¶¶ 238, 261, 284, 319, 342, 376.

While the First Amended Complaint does not specify how each Defendant engaged in deceptive trade practices, its factual allegations allow the Court to draw a reasonable inference that Defendant Florida One is liable for the misconduct alleged. *See supra* Section III.B.1.

### 6. *Common Law Trademark Infringement and Unfair Competition*

The elements of common law claims for trademark infringement and unfair competition mirror the federal standard. *CarFreshner Corp. v. Valio, LLC*, 2016 WL 7246073, *7 (D. Nev. 2016); *46 Labs, LLC v. Parler LLC*, 2022 WL 2974121, at *5 (D. Nev. 2022); *see also Grey v. Campbell Soup Co.*, 650 F. Supp. 1166, 1173 (C.D. Cal. 1986), *aff'd*, 830 F.2d 197 (9th Cir. 1987) ("The tests for infringement of a federally registered mark under § 32(1), 15 U.S.C. § 1114(1), infringement of a common law trademark, unfair competition under § 43(a), 15 U.S.C. § 1125(a), and common law unfair competition involving trademarks are the same: whether confusion is likely."). As a result, the Court refers to its analysis above for its finding that a reasonable inference can be made that Defendant Florida One is liable for the alleged misconduct. *See supra* Section III.B.1.

### 7. Copyright Infringement

"To state a claim for copyright infringement, [Plaintiff] must plausibly allege two things: (1) that [he] owns a valid copyright in [the works], and (2) that [Defendants] copied protected aspects of [Plaintiff's works]." *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1116–17 (9th Cir. 2018) (citations omitted), *overruled on other grounds in Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020).

BBK alleges that it owns the copyrighted works. ECF No. 45 at ¶¶ 100–03, 357–58, Ex. E. It also alleges that Defendants copied Plaintiff's copyrighted work. *Id.* at ¶¶ 141–42, 154–62, 164–65, 369, Ex F.

Here, though the Complaint does not specify how each Defendant engaged in copyright infringement, the First Amended Complaint's factual allegations allow the Court to draw a reasonable inference that Defendant Florida One is liable for the misconduct alleged. *See supra* Section III.B.1.

### C.    The Sum of Money at Stake in the Action

The fourth *Eitel* factor addresses the damages at stake in the action. *See Eitel*, 782 F.2d at 1471. The Court considers "the amount of money requested in relation to the seriousness of the defendant's conduct, whether large sums of money are involved, and whether 'the recovery sought is proportional to the harm caused by [the] defendant's conduct.'" *Next Gaming, LLC v. Glob. Gaming Grp., Inc.*, No. 2:14-cv-00071-MMD-CWH, 2016 WL 3750651, at *3 (D. Nev. July 13, 2016) (quoting *Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 921 (N.D. Cal. 2010)).

BBK seeks monetary damages from Defendant Florida One for trademark and trade dress violations and false advertising claims in the form of an award of $877,181.47 for disgorgement of profits. "[D]isgorgement of profits is a traditional trademark remedy." *Jerry's Famous Deli, Inc v. Papanicolaou*, 383 F.3d 998, 1004–05 (9th Cir. 2004). Moreover, a plaintiff is entitled to the amount of the defendant's gross sales unless the defendant adequately proves amount of costs to be deducted from it. *Am. Honda Motor Co. v. Two Wheel Corp.*, 918 F.2d 1060, 1063 (2d Cir.

1990); *see also Polo Fashions, Inc. v. Dick Bruhn, Inc.*, 793 F.2d 1132, 1135 (9th Cir. 1986) (awarding receipts from sale pursuant to 15 U.S.C. § 1117(a)).  The Declaration of J. Alex Grimsley asserts that Defendant Florida One's total estimated gross revenue from sales of the BroCone-branded Products it acquired from NEPA comes to $877,181.47. *See* ECF No. 89 at ¶ 5, Ex. C.  Taking the FAC's factual allegations as true, Plaintiff alleges sufficient facts for the Court to reasonably infer that Defendant Florida One infringed on BBK's trademark and trade dress and that it is liable for false adverting.  This is a large sum, but it equals the gains from the infringing conduct and is in direct proportion to the harm caused.

BBK also seeks an additional award of $4,283,300.00 jointly and severally from all Defendants "found liable" as compensation for corrective advertising expenses directly attributable to remedy the harm caused by them. ECF No. 88 at 22.  This amount corresponds with Mr. Grimsley's declaration that BBK's estimated corrective marketing expenses over a 12-month period will total $4,283,300.00. ECF No. 89 at ¶ 6, Ex. D.  The Court notes that Plaintiff has entered into a confidential settlement agreement with Defendants NEPA and NEPA2. ECF Nos. 104, 108.  Pursuant to that agreement, "[t]he NEPA Defendants are jointly and severally liable to BBK for, and shall pay BBK, monetary damages for trademark, trade dress and copyright infringement in the amount and in the manner as set forth in the parties' Confidential Settlement Agreement (the "Payment Provision"). *Id.* at ¶ 5.  At this juncture, the Court cannot determine whether the $4,283,300.00 sought takes (or does not take) into account conduct by NEPA and/or NEPA2.  If the amount sought includes conduct by NEPA and NEPA2, Plaintiff would theoretically be getting an award above and beyond what is due.  As a result, based on the information before the Court, it cannot determine whether "the recovery sought is proportional to the harm caused by [the] defendant's conduct." *Next Gaming*, 2016 WL 3750651 at * 3.  These damages are denied without prejudice.

Lastly, BBK seeks an award of statutory damages for copyright infringement in the amount $1,350,000.00 and an award of attorney fees.[1] These requested damages suffer from the same problem identified above. Accordingly, those damages are denied without prejudice.

### D. Possibility of a Dispute Concerning Material Facts

As stated above, once the Clerk of Court enters default, all well-pleaded facts in the complaint, except those relating to damages, are taken as true. *PepsiCo.*, 238 F. Supp. 2d at 1177. Because the FAC contains well-pleaded facts alleging Federal Trademark and Trade Dress Infringement, False Designation of Origin and Unfair Competition, False Advertising, Violation of the Nevada Deceptive Trade Practices Act under NRS 41.600(e) and NRS 598.091, Nevada common law Trademark Infringement and Unfair Competition, and Copyright Infringement by Defendants (including Defendant Florida One), the possibility of a dispute concerning material facts is low. As a result, this factor weighs in favor of default judgment.

### E. Excusable Neglect

The sixth factor considers whether the Defendants' defaults are due to excusable neglect. If a defendant is "properly served with the complaint, the notice of entry of default, as well as the papers in support of the instant motion," the default "cannot be attributed to excusable neglect." *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001).

It is unlikely that the defaults are due to excusable neglect in this case. As discussed above, BBK properly served Defendant Florida One. ECF Nos. 54, 58. As a result, this factor weighs in favor of default judgment.

### F. Policy for Decisions on the Merits

As the Ninth Circuit in *Eitel* explained, "default judgments are ordinarily disfavored." *Eitel*, 782 F.2d at 1472. "Cases should be decided upon their merits whenever reasonably possible." *Id.* This public policy factor weighs against default judgment. Nonetheless,

---

[1] Given the Court's finding, it dispenses with the legal paradigm surrounding these damages.

evaluating all seven *Eitel* factors as applied to this case, the Court finds that the majority of the factors weigh in favor of default judgment.

Considering all the *Eitel* factors, the Court finds, in its discretion, that entering a default judgment in this case is appropriate, consistent with this Order.

### G.     Permanent Injunction

Plaintiff also seeks a permanent injunction prohibiting Defendant from infringing on its intellectual property rights. "[A] permanent injunction may be entered where the plaintiff shows: '(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of the hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.'" *La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 879 (9th Cir. 2014). Injunctive relief is almost always appropriate in trademark and unfair competition cases, "since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988).

Here, the Court finds that a permanent injunction is appropriate. First, Plaintiff has suffered and will continue to suffer irreparable injury (including to its goodwill) without a permanent injunction. Second, remedies at law (including monetary damages) are inadequate to compensate Plaintiff for the ongoing damage that it will suffer if the infringement is allowed to continue. Third, considering the balance of the hardships between Plaintiff and Defendant Florida One, a permanent injunction is still warranted. Simply put, Defendant Florida One has no right to infringe on Plaintiff's intellectual property. Fourth, the public interest is not disserved by a permanent injunction. To the contrary, the public will be served by a permanent injunction that prevents confusion about the source of Plaintiff and Defendants' goods. Accordingly, a permanent injunction that prohibits Defendant Florida One from continuing to infringe on Plaintiff's intellectual property is warranted. The Court therefore grants Plaintiff's request for a permanent injunction as requested at ECF No. 92 at ¶¶ 19, 90, 11–12.

## IV.  CONCLUSION

**IT IS ORDERED** that Plaintiff's Motion for Default Judgment, (ECF No. 88), is **GRANTED**.

**IT IS FURTHER ORDERED** that judgment shall be entered as follows: $877,181.47 against Defendant Florida One.

**IT IS FUIRTHER ORDERED** that Plaintiff may re-file a renewed motion on the issue of the remaining damages sought.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Permanent Injunctive Relief, (ECF No. 92), is **GRANTED**.

DATED: March 15 , 2024

Gloria M. Navarro
United States District Judge