1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

\* \* \*

BBK TOBACCO & FOODS, LLP,

      Plaintiff,

 v.

AIMS GROUP USA CORPORATION, et al.

      Defendant.

Case No.: 2:22-cv-01648-GMN-BNW

**REPORT AND RECOMMENDATION**

   Before the Court is Plaintiff BBK Tobacco & Foods's Motion for Default Judgment and Permanent Injunction against Defendant Brocone Organic Private Limited (BOPL). ECF Nos. 112, 114. No response has been filed. For the reasons discussed below, the Court recommends that Plaintiff's Motion for Default Judgment and Plaintiff's Motion for Permanent Injunction be **GRANTED**.

## I.  BACKGROUND

   On February 22, 2023, Plaintiff BBK filed a First Amended Complaint ("FAC"). ECF No. 45. The FAC alleges that BBK produces and sells smoking products and accessories, including its RAW®-brand rolling papers. *Id*. at ¶ 2. BBK alleges that for its RAW™-brand products, it develops and uses distinctive trademarks and trade dresses registered with the U.S. Patent and Trademark Office ("PTO") and copyrighted designs registered with the U.S. Copyright Office. *Id*. at ¶ 3. BBK uses—on packaging and in advertising for RAW®-brand products—"THE NATURAL WAY TO ROLL" slogan, which BBK has used as a trademark for its products since 2007 and which the PTO registered as a BBK trademark for "cigarette rolling papers" in 2010 (the "RAW®-Brand Product Slogan"). *Id*. at ¶ 4. BBK uses, and has used since

2017, the RAW Cone Bro™ mark for glass mouthpieces. *Id*. at ¶ 5. BBK has also filed an application for PTO registration of the RAW Cone Bro™ mark. *Id*.

According to BBK, Defendants misappropriated BBK's RAW®-brand packaging designs, RAW®-Brand Product Slogan, and RAW Cone Bro™ trademark by selling (without BBK's permission) certain rolling papers and pre-rolled cones. *Id*. at ¶ 6. It is also alleged that Defendants' packaging infringes BBK's copyright in designs for RAW™-brand product packaging, mimics the overall commercial impression of the RAW™-brand packaging design, and uses BBK's RAW®-Brand Product Slogan and "BroCone" name. *Id*. BBK also alleges that Defendants include false statements about both the origin and characteristics of the "BroCone" products on their "BroCone" product packaging. *Id*. at ¶ 212. In addition, according to the FAC, Defendants' misuse of BBK's intellectual property and Defendants' false advertising is deceiving and confusing consumers and is causing harm—including irreparable harm and damages—to BBK. *Id*. at ¶¶ 9, 294, 297.

In turn, BBK alleges claims against all Defendants, including Defendant BOPL for: (1) Federal Trademark Infringemnet under 15 U.S.C. § 1114(1)(a), Lanham Act § 32(1); (2) Trade Dress Infringement under 15 U.S.C. § 1114(1)(a), Lanham Act § 32(1); (3) False Designation of Origin and Unfair Competition under 15 U.S.C. § 1125(a)(1)(A), Lanham Act § 43(a); (4) False Advertising under 15 U.S.C. § 1125(a)(1)(B), Lanham Act § 43(a); (5) Violation of the Nevada Deceptive Trade Practices Act under NRS 41.600(e) and NRS 598.0915; (6) Nevada common law Trademark Infringement and Unfair Competition; and (7) Copyright Infringement under 17 U.S.C. § 501 *et seq. Id.* at ¶¶ 229-391. Plaintiff sought a preliminary and permanent injunction prohibiting Defendants from engaging in this conduct in the future, a mandatory injunction for the destruction of the alleged infringing products, damages, attorneys' fees, and costs. *Id*. at pp. 58–60.

A summons was issued to Defendant BOPL and was accepted on February 22, 2023. ECF No. 47. Defendant BOPL did not answer or otherwise respond to Plaintiff's FAC. Accordingly, on April 6, 2023, Plaintiff moved for entry of clerk's default. ECF No. 55. The

Clerk granted this request on April 20, 2023. ECF No. 56. Defendant BOPL has not moved to set aside the entry of default, responded to the FAC, or otherwise appeared. As a result, Plaintiff now moves for default judgment against Defendant BOPL and seeks a permanent injunction. ECF Nos. 112, 114.

Courts must examine both subject matter and personal jurisdiction when default judgment is sought against a non-appearing party. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). This Court has original subject matter jurisdiction over the federal law claims under 28 U.S.C. §§ 1331, 1332, 1338, and 2201 and 15 U.S.C. § 1121. Furthermore, diversity jurisdiction exists over all claims (ECF No. 45 at ¶¶ 10–16), as well as supplemental jurisdiction over the state law claims under 28 U.S.C. §1367(a). Venue is proper in this Court pursuant to, *inter alia*, 28 U.S.C. §§ 1391 and 1400.

In addition, this Court may properly exercise personal jurisdiction over Defendant BOPL because BBK satisfies the minimum-contacts test and properly served BOPL. *Sec. & Exch. Comm'n v. Ross*, 504 F.3d 1130, 1138 (9th Cir. 2007) (citation omitted). Specific jurisdiction over a nonresident defendant is proper if three requirements are met:

(1) the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2) the plaintiff's claim arises from the defendant's forum-related activities; and

(3) the exercise of jurisdiction over the defendant is reasonable.

*Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002).

First, the FAC alleges BOPL purposefully directed its activities in Nevada by offering for sale "BroCone" products in Nevada and elsewhere through BOPL's wholly owned subsidiary AIMS, who imported "BroCone" branded goods into the U.S. and collaborated with Defendant NEPA Wholesale, Inc. ("NEPA") in its business activities in Nevada. ECF No. 45 at ¶ 24. In addition, Plaintiff alleges NEPA sold "BroCone" brand products distributed in Nevada, imported

and shipped "BroCone" products sold to consumers in Nevada and promoted the sale of "BroCone" products at 2021 and 2022 trade shows in Nevada. *Id*. at ¶¶ 18-20. Thus, Plaintiff maintains BOPL, through its wholly owned U.S. subsidiary, AIMS, conducted business activities in Nevada by (1) appearing at and participating in the TPE trade show held in Las Vegas, Nevada May 12-14, 2021, where AIMS offered for sale and/or sold a wide variety of "BroCone" branded products to retailers, including retailers located in Nevada, (2) collaborating with NEPA and its operation of a website located at <brocone.com>, including the sale of "BroCone" products, (3) marketing and promoting products through the Instagram social-media application using the handle @brocone.official, which directs consumers to NEPA's interactive website, where customers may directly purchase "BroCone" products, and (4) informing consumers that Defendant NEPA is AIMS's distributor and directing customers to "FIND BROCONE @nepawholesale." *Id*. at ¶¶ 21-22, 24.

Second, the FAC alleges the claims arising from BOPL's infringing conduct are related to Nevada. BBK explains that its trademark, trade dress, and copyright infringement claims and its false advertising claims are based on the promotion and sale, including the promotion and sale in Nevada, of "BroCone" branded products manufactured by BOPL. *Id*. at ¶¶ 21-22, 24-25. In addition, BBK alleges that BOPL exported the products to the United States through BOPL's wholly owned subsidiary, AIMS, who appeared and participated in Las Vegas trade shows promoting the products and arranging sales of the products to retailers, including retailers located in Nevada. *Id*.

Third, exercising jurisdiction over BOPL is reasonable because (1) BOPL's wholly owned U.S. subsidiary intentionally appeared in Nevada to promote and sell the Infringing Products, (2) BOPL had fair warning that its activities involved in the promotion and sale of the infringing "BroCone" branded products could subject BOPL to this Court's jurisdiction. *Id*. at ¶¶ 24, 110, 122, 127.

BOPL also received proper service of the Summons and the FAC when BOPL's authorized representative accepted service of both. ECF No. 47. Pursuant to Federal Rule of

Civil Procedure 4(h), a foreign corporation may be served by delivering a copy of the Summons and Complaint to "an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process" or a representative so integrated with the organization that he will know what to do with the papers. *Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988). Here, Mr. Jayesh Patel indicated he was authorized to accept, and did accept, the service of the summons and the FAC. ECF No. 47.

## II.    LEGAL STANDARD

Obtaining default judgment is a two-step process governed by Rule 55 of the Federal Rules of Civil Procedure. *See Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986). First, the moving party must seek an entry of default from the clerk of court. FED R. CIV. P. 55(a). Entry of default is only appropriate when a party "has failed to plead or otherwise defend." *Id*. Additionally, the Rule 55(a) advisory note indicates that it is inappropriate to enter a default against a party who has indicated their intent to defend. *Id*. After the clerk enters the default, a party must then separately seek entry of default judgment from the court in accordance with Rule 55(b). Upon entry of a clerk's default, the court takes the factual allegations in the complaint as true, except those relating to the amount of damages. *See TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (per curiam).

In determining whether to grant default judgment, courts are guided by the following seven *Eitel* factors: (1) the possibility of prejudice to the plaintiff, (2) the merits of the plaintiff's substantive claims, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong public policy favoring decisions on the merits. *Eitel*, 782 F.2d at 1471–72.

## III.    DISCUSSION

As an initial matter, Plaintiff has met the first step of the two-step process for obtaining default judgment. Pursuant to Rule 55(a), the Clerk of the Court correctly entered default against

1  Defendant BOPL because it did not appear in the case. *See* Clerk's Entry of Default, ECF No.

2  56. Thus, the Court, in its discretion, may order a default judgment after a balance of the *Eitel*

3  factors.

4          **A.**       **Possibility of Prejudice to the Plaintiff**

5          The first *Eitel* factor the Court considers is the possibility of prejudice to the plaintiff. A

6  defendant's failure to respond or otherwise appear in a case "prejudices a plaintiff's ability to

7  pursue its claims on the merits." *See, e.g.*, *Nationstar Mortg. LLC v. Operture, Inc.*, No: 2:17-cv-

8  03056-GMN-PAL, 2019 WL 1027990, at *2 (D. Nev. Mar. 4, 2019); *PepsiCo, Inc. v. Cal. Sec.*

9  *Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("If Plaintiffs' motion for default judgment

10  is not granted, Plaintiffs will likely be without other recourse for recovery."). BBK will also

11  suffer prejudice with no recourse to prevent further infringement. *See Levi Strauss & Co. v. Toyo*

12  *Enter. Co., Ltd.*, 665 F. Supp. 2d 1084, 1095 (N.D. Cal. 2009) (finding factor satisfied where

13  trademark plaintiff alleged inability "to prevent continued infringement and dilution"). As a

14  result, this factor weighs in favor of default judgment.

15          **B.**       **Plaintiff's Substantive Claims and the Sufficiency of the Complaint**

16          The second and third factors focus on the merits of Plaintiff's substantive claims and the

17  sufficiency of the complaint. *See Eitel*, 782 F.2d at 1471. These factors, often analyzed together,

18  require courts to determine whether a plaintiff has "state[d] a claim on which [it] may recover."

19  *PepsiCo*, 238 F. Supp. 2d at 1175. Courts often consider these factors "the most important."

20  *Vietnam Reform Party v. Viet Tan – Vietnam Reform Party*, 416 F. Supp. 3d 948, 962 (N.D. Cal.

21  2019). If a district court has "serious reservations" about the merits of a plaintiff's claims based

22  on the pleadings, these factors weigh in favor of denying default judgment. *See Eitel*, 782 F.2d at

23  1472. "A claim has facial plausibility when the plaintiff pleads factual content that allows the

24  court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

25  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S.

26  544, 556 (2007)). "Where the allegations in a complaint are not 'well-pleaded,' liability is not

27  established by virtue of the defendant's default and default judgment should not be entered." *See*

28

*Adobe Sys., Inc. v. Tilley*, No. C09-1085 PJH, 2010 WL 309249, at *3 (N.D. Cal. Jan. 19, 2010). As explained in detail below, these two factors weigh in favor of default judgment as to all claims alleged in the FAC.

### 1. *Trademark Infringement*

To prevail on a trademark infringement claim, a plaintiff must show: "(1) it has a valid, protectable mark; and (2) the defendant's use of the mark is likely to cause consumer confusion." *OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.*, 897 F.3d 1008, 1022 (9th Cir. 2018). Courts use several factors to determine whether there will be a likelihood of confusion, including: the strength of the mark, the proximity of the goods, the similarity of the marks, the evidence of actual confusion, the marketing channels used, the type of goods and degree of care likely to be exercised by the purchaser, the defendant's intent in selecting the mark, and the likelihood of expansion of product lines. *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979), *abrogated in part on other grounds by Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792 (9th Cir. 2003).

Plaintiff claims that it is the owner of the federally registered trademarks and attached the U.S. Trademark Registration Certificates to its FAC. ECF No. 45 at ¶ 31, 32, 36, 64–66, 74, Ex. B and C.

The FAC alleges Defendants' use of these marks is likely to cause confusion. ECF No. 45 at ¶¶ 159, 191, 208, 233, 256, 278, 313. To begin, BBK alleges that it owns, and has used since 2017, the RAW Cone Bro™ name as a trademark for a RAW™-brand smoking product. *Id*. at ¶¶ 89–92. In addition, BBK alleges that it owns "THE NATURAL WAY TO ROLL" slogan (the "RAW®-Brand Product Slogan"), which has been used since 2007 and was registered with the PTO as a trademark for use with BBK rolling papers since 2011. *Id*. at ¶¶ 104–8. Years later, Defendants began selling rolling papers and cones using the name "BroCone" on packaging and advertising of the products. *Id*. at ¶ 194. Defendants' "BroCone" rolling-paper products copy verbatim and misuse the RAW®-Brand Product Slogan. *Id*. at ¶¶ 169–81. In sum, Defendant BOPL, which is a competing distributor of rolling-paper products

(*id*. at ¶ 110, 122), promoted and sold competing rolling paper products using the "BroCone" name, even though BOPL knew of BBK's prior use of the RAW Cone Bro™ name for BBK glass mouthpieces for rolled and pre-rolled cones. *Id*. at ¶¶ 130-133. The marketing and sales of the "BroCone" Products using the "BroCone" brand occur in some of the same marketing and sales locations as the RAW™-Brand products that use BBK's RAW Cone Bro™ name, RAW®-Brand Product Slogan, and RAW™-Brand Trade Dress. *Id*. at ¶¶ 188 and 205. In addition, Defendants' use of the "BroCone" name, the "BroCone" Package and Box Graphic Designs, and the slogan "The NATURAL WAY TO ROLL" have actually confused and/or deceived consumers, diverting sales from BBK's RAW™-Branded Products to Defendants' competing "BroCone" products. *Id*. at ¶¶ 233, 256, 261–63, 28–86, 313, 319, 321, 338.

These allegations sufficiently plead the elements of trademark infringement, but the FAC does not specify in what ways each Defendant is alleged to have infringed on Plaintiffs' trademarks. Courts in the Ninth Circuit have found pleading to be insufficient when a plaintiff sues multiple defendants without specifying which defendant is liable for which cause of action. *See, e.g.*, *Dougherty v. Bank of Am., N.A.*, 177 F. Supp. 3d 1230, 1253 (E.D. Cal. 2016) (stating that when defendants are referenced collectively under "cause of action" in the complaint, pleading must detail adequate facts against each defendant); *Friedman v. Zimmer*, No. CV 15–502 GHK, 2015 WL 6164787, at *2 (C.D. Cal. July 10, 2015) (noting that lumping defendants together may violate Rule 8 when "the pleadings are largely incomprehensible").

Here, though the FAC does not specify exactly how each Defendant engaged in trademark infringement, the FAC's factual allegations allow the Court to draw a reasonable inference that Defendant BOPL is liable for the misconduct alleged. *See Reflex Media, Inc. v. Richard Easton Ltd.*, No. 220CV00051GMNEJY, 2023 WL 6119950 at * 5 (D. Nev. Sept. 15, 2023)(finding reasonable inferences could be drawn despite lack of specificity in the complaint). This is based on Plaintiff's allegation that Defendant BOPL produces rolling-paper products and exports and sells them into the U.S. from its principal place of business in the Country of India. ECF No. 45 at ¶ 110. BBK also alleges BOPL carries on business activities in the United States

and in Nevada through its collaboration with NEPA and AIMS (BOPL's subsidiary), and its operation of a website located at <brocone.com>, which sells "BroCone" products. *Id*. at ¶ 24. BBK asserts Defendant BOPL owns and co-operates this website. *Id*. at ¶ 127. BBK also alleges BOPL exports "BroCone" products into the United States through Defendant AIMS and that Defendants BOPL and AIMS are commonly owned. *Id*.

### 2.  *Trade Dress Infringement*

A claim for trade dress infringement also requires the plaintiff's ownership of distinctive trade dress and a likelihood of confusion, but it requires the additional elements that the claimed trade dress be nonfunctional. *See Talking Rain Beverage Co. Inc. v. S. Beach Beverage Co*., 349 F.3d 601, 603 (9th Cir. 2003) (citing elements of proof as: "(1) non-functionality, (2) distinctiveness, and (3) likelihood of confusion").

BBK alleges that it uses a distinctive trade dress for the packaging of RAW®-brand rolling paper and RAW™-brand pre-rolled cones. ECF No. 45 at ¶¶ 34–46, 63–66, Ex. B. The FAC describes that trade dress extensively and specifically and defines those designs as the "RAW™- Brand Trade Dress." *Id*. at ¶¶ 28–92. The RAW™-Brand Trade Dress is inherently distinctive (*id*. at ¶ 52) and has acquired distinctiveness through nearly two decades of continuous and extensive use in commerce as an indicator of the source of RAW™-Brand Products to the consuming public. *Id*. at ¶¶ 78–80. The RAW™-Brand Trade Dress serves as a symbol of the quality of the products packaged in the RAW™-Brand Trade Dress and has garnered significant goodwill in the marketplace for RAW™-Brand Products. *Id*. at ¶ 88. BBK has registered some of the RAW™-Brand Trade Dresses with the PTO. *Id*. at ¶ 36.

According to BBK, Defendants are knowingly promoting and selling "BroCone" products using packaging designs (the "'BroCone' Package and Box Graphic Designs") similar in visual appearance to the designs of the RAW™-Brand Trade Dress. *Id*. at ¶¶ 140–42, 154–58, 194–204, and Ex. F. The combined textual and graphic elements of the "BroCone" Package and Box Graphic Designs create the same overall visual impression as the RAW™-Brand Trade

Dress, such that consumers are confused. *Id*. at ¶ 261. The same analysis above regarding likelihood of confusion as to the trademark infringement claim applies here as well.

In addition, BBK's RAW™-Brand Trade Dress is nonfunctional (ECF No. 45 at ¶ 83) and distinctive (*id*. at ¶¶ 77–80).

Here, though the FAC does not specify exactly how each Defendant engaged in trade dress infringement, the FAC's factual allegations allow the Court to draw a reasonable inference that Defendant BOPL is liable for the misconduct alleged. *See supra* Section III.B.1.

### 3. False Designation of Origin and Unfair Competition

To prevail on a claim of false association or false designation of origin, a plaintiff must show that "(1) defendant uses a designation (any word, term, name, device, or any combination thereof) or false designation of origin; (2) the use was in interstate commerce; (3) the use was in connection with goods or services; (4) the designation or false designation is likely to cause confusion, mistake, or deception as to (a) the affiliation, connection, or association of defendant with another person, or (b) as to the origin, sponsorship, or approval of defendant's goods, services, or commercial activities by another person; and (5) the plaintiff has been or is likely to be damaged by these acts." *United Tactical Sys., LLC v. Real Action Paintball, Inc*., 143 F. Supp. 3d 982, 1015 (N.D. Cal. 2015).

As alleged in the FAC, Defendants' use of the "BroCone" brand name, the "BroCone" Package and Box Graphic Designs, and the slogan "THE NATURAL WAY TO ROLL" on packaging and advertising for, and/or to identify the "BroCone" Products, including use on packaging and instore displays, constitutes a false designation of origin that has caused, or is likely to cause, confusion, mistake, and deception as to the affiliation, connection, or association between the "BroCone" Products and the RAW™-Brand Products and commercial activities of BBK. ECF No. 45 at ¶ 278. Further, the use was in interstate commerce. *Id*. at ¶ 312. Moreover, the use injures BBK's commercial interest in its reputation and reduces BBK's sales of its products. *Id*. at ¶ 281–87.

Here, though the FAC does not specify how each Defendant engaged in False Designation of Origin and Unfair Trade, the FAC's factual allegations allow the Court to draw a reasonable inference that Defendant BOPL is liable for the misconduct alleged. *See supra* Section III.B.1.

### 4. False Advertising

To establish a false advertising claim under Section 43(a) of the Lanham Act, a plaintiff must prove "that the defendant made a material false statement of fact in a commercial advertisement and that the false statement deceived or had a tendency to deceive a substantial segment of its audience." *Muzikowski v. Paramount Pictures Corp.*, 477 F.3d 899, 907 (7th Cir. 2007). A plaintiff asserting a false advertising claim must allege that its injury (1) is within the "zone of interests" protected by the Lanham Act, and (2) was proximately caused by defendant's violation of the Lanham Act. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127–30 (2014). "[T]o come within the zone of interests in a suit for false advertising under § 1125(a), a plaintiff must allege an injury to a commercial interest in reputation or sales." *Id*. at 131–32. To demonstrate proximate cause, "a plaintiff suing under § 1125(a) ordinarily must show economic or reputation injury flowing directly from the deception wrought by the defendant's advertising, and that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Id*. at 133.

The FAC alleges that Defendants made false statements of fact about "BroCone" products in a commercial advertisement. ECF No. 45 at ¶¶ 217–19, 225–27, 292–95. In addition, it alleges that these false statements deceived or had a tendency to deceive a substantial segment of its audience. *Id*. at ¶¶ 228, 294–95. It also alleges that the deception is material. *Id*. In addition, it claims that the false statements entered interstate commerce and that BBK has been or is likely to be injured as a result of the false statements, either by Defendants' diversion of sales from BBK to Defendants or by lessening of the goodwill associated with BBK's products. *Id*. at ¶¶ 211–28, 296–97. Lastly, it alleges that these statements have caused substantial and irreparable damage and injury to BBK. *Id*. at ¶¶ 45, 297, 299300, 301, 30305.

Here, though the FAC does not specify how each Defendant engaged in False Advertising, the FAC's factual allegations allow the Court to draw a reasonable inference that Defendant BOPL is liable for the misconduct alleged. *See supra* Section III.B.1.

### 5. *Nevada Deceptive Trade Practices Act*

Under Nevada's Deceptive Trade Practices Act ("DTPA"), a defendant is liable if it: "[k]nowingly passes off goods or services for sale or lease as those of another person. . . .[u]ses deceptive representations or designations of geographic origin in connection with goods or services for sale or lease . . . makes a false representation as to the characteristics, ingredients, uses, benefits, alterations or quantities of goods or services for sale or lease or a false representation as to the sponsorship, approval, status, affiliation, or connection of a person therewith . . . [or] [r]epresents that goods or services for sale or lease are of a particular standard, quality or grade, or that such goods are of a particular style or model, if he or she knows or should know that they are of another standard, quality, grade, style or model." NEV. REV. STAT. § 598.0915(1), (4), (5), and (7). The DTPA provides that "[e]vidence that a person has engaged in a deceptive trade practice is prima facie evidence of intent to injure competitors and to destroy or substantially lessen competition." NEV. REV. STAT. § 598.0953(1). Thus, "a business shown to be engaged in deceptive trade practices is presumed to intend for those practices to injure its competitors and destroy competition." *S. Serv. Corp. v. Excel Bldg. Servs., Inc.*, 617 F. Supp. 2d 1097, 1099 (D. Nev. 2007).

BBK's FAC alleges that Defendants acted with the express intent of deceiving consumers and injuring BBK. ECF No. 45 at ¶¶ 334–35, 337. Furthermore, it alleges that Defendants' false statements, and the similarity between the "BroCone" name, the "BroCone" Package and Box Graphic Designs, and the use of "THE NATURAL WAY TO ROLL" slogan, on the one hand, and BBK's RAW Cone Bro™ name, RAW™-Brand Trade Dress, RAW®-Brand Product Slogan, on the other hand, is so great that consumers have been deceived and confused and have, as a result, withheld trade from BBK. *Id*. at ¶¶ 238, 261, 284, 319, 342, 376.

While the FAC does not specify how each Defendant engaged in Deceptive Trade Practices, its factual allegations allow the Court to draw a reasonable inference that Defendant BOPL is liable for the misconduct alleged. *See supra* Section III.B.1.

### 6. *Common Law Trademark Infringement and Unfair Competition*

The elements of common law claims for trademark infringement and unfair competition mirror the federal standard. *CarFreshner Corp. v. Valio, LLC*, 2016 WL 7246073, *7 (D. Nev. 2016); *46 Labs, LLC v. Parler LLC*, 2022 WL 2974121, at *5 (D. Nev. 2022); *see also Grey v. Campbell Soup Co.*, 650 F. Supp. 1166, 1173 (C.D. Cal. 1986), *aff'd*, 830 F.2d 197 (9th Cir. 1987) ("The tests for infringement of a federally registered mark under § 32(1), 15 U.S.C. § 1114(1), infringement of a common law trademark, unfair competition under § 43(a), 15 U.S.C. § 1125(a), and common law unfair competition involving trademarks are the same: whether confusion is likely."). As a result, the Court refers to its analysis above for its finding that a reasonable inference can be made that Defendant BOPL is liable for the alleged misconduct. *See supra* Section III.B.1.

### 7. *Copyright Infringement*

"To state a claim for copyright infringement, [Plaintiff] must plausibly allege two things: (1) that [he] owns a valid copyright in [the works], and (2) that [Defendants] copied protected aspects of [Plaintiff's works]." *Rentmeester v. Nike, Inc*., 883 F.3d 1111, 1116–17 (9th Cir. 2018) (citations omitted), *overruled on other grounds in Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin,* 952 F.3d 1051, 1064 (9th Cir. 2020).

BBK alleges that it owns the copyrighted works. ECF No. 45 at ¶¶ 100–03, 357–58, Ex. E. It also alleges that Defendants copied Plaintiff's copyrighted work. *Id*. at ¶¶ 141–42, 154–62, 164–65, 369, Ex F.

Here, though the FAC does not specify how each Defendant engaged in Copyright Infringement, the FAC's factual allegations allow the Court to draw a reasonable inference that Defendant BOPL is liable for the misconduct alleged. *See supra* Section III.B.1.

///

1

**C.      The Sum of Money at Stake in the Action**

2       The fourth *Eitel* factor addresses the damages at stake in the action. *See Eitel*, 782 F.2d at

3    1471. The Court considers "the amount of money requested in relation to the seriousness of the

4    defendant's conduct, whether large sums of money are involved, and whether 'the recovery

5    sought is proportional to the harm caused by [the] defendant's conduct.'" *Next Gaming, LLC v.*

6    *Glob. Gaming Grp., Inc.*, No. 2:14-cv-00071-MMD-CWH, 2016 WL 3750651, at *3 (D. Nev.

7    July 13, 2016) (quoting *Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 921

8    (N.D. Cal. 2010)).

9       BBK seeks monetary damages from Defendant BOPL for trademark and trade dress

10   violations and false advertising claims in the form of an award of $905, 909.74 for disgorgement

11   of profits. "[D]isgorgement of profits is a traditional trademark remedy." *Jerry's Famous Deli,*

12   *Inc v. Papanicolaou*, 383 F.3d 998, 1004–05 (9th Cir. 2004). Moreover, a plaintiff is entitled to

13   the amount of the defendant's gross sales unless the defendant adequately proves amount of costs

14   to be deducted from it. *American Honda Motor Co. v. Two Wheel Corp.*, 918 F.2d 1060, 1063

15   (2d Cir. 1990); *see also Polo Fashions, Inc. v. Dick Bruhn, Inc.*, 793 F.2d 1132, 1135 (9th Cir.

16   1986) (awarding receipts from sale pursuant to 15 U.S.C. § 1117(a)). The Declaration of J. Alex

17   Grimsley asserts that Defendant BOPL's total estimated gross revenue from sales of the

18   "BroCone"-branded Products comes to $905, 909.74. *See* ECF No. 113 at ¶ 2, Ex. A. Taking the

19   FAC's factual allegations as true, Plaintiff alleges sufficient facts for the Court to reasonably

20   infer that Defendant BOPL infringed on BBK's trademark and trade dress and that it is liable for

21   false adverting. This is a large sum, but it equals the gains from the infringing conduct and is in

22   direct proportion to the harm caused.

23      BBK also seeks an additional award of $4,283,300.00 jointly and severally from all

24   Defendants "found liable" as compensation for corrective advertising expenses directly

25   attributable to remedy the harm caused by them. ECF No. 112 at 19. This amount corresponds

26   with Mr. Grimsley's declaration that BBK's estimated corrective marketing expenses over a 12-

27   month period will total $4,283,300.00. ECF No. 113 at ¶ 3, Ex. B. The Court notes that Plaintiff

28

has entered into a confidential settlement agreement with Defendants NEPA and NEPA2. ECF
Nos. 104, 108. Pursuant to that agreement, "[t]he NEPA Defendants are jointly and severally
liable to BBK for, and shall pay BBK, monetary damages for trademark, trade dress and
copyright infringement in the amount and in the manner as set forth in the parties' Confidential
Settlement Agreement (the "Payment Provision"). *Id*. at ¶ 5. At this juncture, the Court cannot
determine whether the $4,283,300.00 sought takes (or does not take) into account conduct by
NEPA and/or NEPA2. If the amount sought includes conduct by NEPA and NEPA2, Plaintiff
would theoretically be getting an award above and beyond what is due. As a result, based on the
information before the Court, it cannot determine whether "the recovery sought is proportional to
the harm caused by [the] defendant's conduct." *Next Gaming*, 2016 WL 3750651 at * 3. These
damages are denied without prejudice.

Lastly, BBK seeks an award of statutory damages for copyright infringement in the
amount $1,350,000.00 and an award of attorney fees.[1] These requested damages suffer from the
same problem identified above. As such, those damages are denied without prejudice.

### D.    Possibility of a Dispute Concerning Material Facts

As stated above, once the Clerk of Court enters default, all well-pleaded facts in the
complaint, except those relating to damages, are taken as true. *PepsiCo.*, 238 F. Supp. 2d at
1177. Because the FAC contains well-pleaded facts alleging Federal Trademark and Trade Dress
Infringement, False Designation of Origin and Unfair Competition, False Advertising, Violation
of the Nevada Deceptive Trade Practices Act under NRS 41.600(e) and NRS 598.091, Nevada
common law Trademark Infringement and Unfair Competition, and Copyright Infringement by
Defendants (including Defendant BOPL), the possibility of a dispute concerning material facts is
low. As a result, this factor weighs in favor of default judgment.

///

///

---

[1] Given the Court's finding, it dispenses with the legal paradigm surrounding these damages.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### E.    Excusable Neglect

The sixth factor considers whether the Defendants' defaults are due to excusable neglect. If a defendant is "properly served with the complaint, the notice of entry of default, as well as the papers in support of the instant motion," the default "cannot be attributed to excusable neglect." *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001).

It is unlikely that the defaults are due to excusable neglect in this case. As discussed above, BBK properly served Defendant BOPL and BOPL accepted service. ECF Nos. 47. As a result, this factor weighs in favor of default judgment.

### F.    Policy for Decisions on the Merits

As the Ninth Circuit in *Eitel* explained, "[D]efault judgments are ordinarily disfavored." *Eitel*, 782 F.2d at 1472. "Cases should be decided upon their merits whenever reasonably possible." *Id*. This public policy factor weighs against default judgment. Nonetheless, evaluating all seven *Eitel* factors as applied to this case, the Court finds that the majority of the factors weigh in favor of default judgment.

Considering all the *Eitel* factors, the Court finds, in its discretion, that entering a default judgment in this case is appropriate, consistent with this recommendation.

* * * * * * *

### G.    Permanent Injunction

Plaintiff also seeks a permanent injunction prohibiting Defendant BOPL from infringing on its intellectual property rights. "[A] permanent injunction may be entered where the plaintiff shows: '(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of the hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.'" *La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 879 (9th Cir. 2014). Injunctive relief is almost always appropriate in trademark and unfair competition cases, "since there is no adequate

remedy at law for the injury caused by a defendant's continuing infringement." *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988).

Here, the Court finds that a permanent injunction is appropriate. First, Plaintiff has suffered and will continue to suffer irreparable injury (including to its goodwill) without a permanent injunction. Second, remedies at law (including monetary damages) are inadequate to compensate Plaintiff for the ongoing damage that it will suffer if the infringement is allowed to continue. Third, considering the balance of the hardships between Plaintiff and Defendant BOPL, a permanent injunction is still warranted. Simply put, Defendant BOPL has no right to infringe on Plaintiff's intellectual property. Fourth, the public interest is not disserved by a permanent injunction. To the contrary, the public will be served by a permanent injunction that prevents confusion about the source of Plaintiff and Defendants' goods. Accordingly, a permanent injunction that prohibits Defendant BOPL from continuing to infringe on Plaintiff's intellectual property is warranted. The Court therefore recommends that Plaintiff's request for a permanent injunction as requested at (ECF Nos. 114 p. 21 and 114-1 ¶¶ 11–12) be granted.

## IV.    CONCLUSION

**IT IS RECOMMENDED** that Plaintiff's Motion for Default Judgment (ECF No. 112) be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that judgment shall be entered as follows: $905,909.74 against Defendant BOPL.

**IT IS FURTHER RECOMMENDED** that Plaintiff be allowed to re-file a renewed motion on the issue of the remaining damages sought.

**IT IS FURTHER RECOMMENDED** that Plaintiff's Motion for Permanent Injunctive relief (ECF No. 114) be **GRANTED**.

DATED: March 18, 2024

Brenda Weksler
United States Magistrate Judge