# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

\* \* \*

BBK Tobacco & Foods, LLP,

Plaintiff,

v.

AIMS Group USA Corporation, et al.,

Defendants.

Case No. 2:22-cv-01648-GMN-BNW

**REPORT AND RECOMMENDATION**

Before the Court are three renewed motions by Plaintiff BBK Tobacco & Foods. BBK renewed its motions for default judgment (ECF No. 134) and permanent injunction (ECF No. 140) against AIMS Group USA Corporation a/k/a AIMS Group USA, Inc. ("AIMS"). No responses were filed. The Court previously denied these motions without prejudice because the Clerk had not entered default on the amended complaint. ECF Nos. 124 and 127. Because the Clerk has since entered default on the operative complaint (the second-amended complaint), and for the reasons stated below, the Court recommends that BBK's renewed motions for default judgment and permanent injunction against AIMS be granted. *See* ECF No. 132.

BBK also renewed its motion for a finding that Defendants Florida One Wholesale Inc., Brocone Organic Private Limited ("BOPL"), and AIMS are jointly and severally liable for statutory and corrective advertising damages, and that Florida One, BOPL, and AIMS are individually liable for $10,000 in attorney's fees each. ECF No. 134. No responses were filed. The Court previously denied this request without prejudice because BBK had not explained how its settlement with Defendants NEPA Wholesale Inc. and NEPA 2 Wholesale Inc. affected the joint and several liability of the other defendants. *See* ECF Nos. 122 and 125. Because BBK has since clarified that it seeks an amount against Defendants Florida One, BOPL, and AIMS that has been reduced by the full settlement paid by Defendants NEPA Wholesale Inc. and NEPA 2 Wholesale Inc., and for the reasons discussed below, the Court recommends that BBK's motion for a finding of joint and several liability and attorney's fees be granted.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.    BACKGROUND

### A.  BBK's Claims Against Defendants

On February 22, 2023, BBK filed a second-amended complaint ("SAC"). ECF No. 76. The SAC alleges that BBK produces and sells smoking products and accessories, including its RAW®-brand rolling papers. *Id.* ¶ 2. BBK alleges that for its RAW™-brand products, it develops and uses distinctive trademarks and trade dresses registered with the U.S. Patent and Trademark Office ("PTO") and copyrighted designs registered with the U.S. Copyright Office. *Id.* ¶ 3. BBK uses—on packaging and in advertising for RAW®-brand products—"THE NATURAL WAY TO ROLL" slogan, which BBK has used as a trademark for its products since 2007 and which the PTO registered as a BBK trademark for "cigarette rolling papers" in 2010 (the "RAW®-Brand Product Slogan"). *Id.* ¶ 4. BBK uses, and has used since 2017, the RAW Cone Bro™ mark for glass mouthpieces. *Id.* ¶ 5. On January 16, 2024, after filing the SAC, the PTO issued a trademark registration to BBK for its RAW Cone Bro® mark. *Id.*

According to BBK, Defendants AIMS, BOPL, Florida One, NEPA Wholesale Inc., and NEPA 2 Wholesale Inc. (collectively, "Defendants"), misappropriated BBK's RAW®-brand packaging designs, RAW-Brand Product Slogan, and RAW Cone Bro® trademark by selling (without BBK's permission) certain rolling papers and pre-rolled cones. *Id.* ¶ 6. It is also alleged that Defendants' packaging infringes BBK's copyrighted designs for RAW™-brand product packaging, mimics the overall commercial impression of the RAW™-brand packaging design, and uses BBK's RAW®-Brand Product Slogan and "BroCone" name. *Id.* BBK also alleges that Defendants include false statements about both the origin and characteristics of the "BroCone" products on their "BroCone" product packaging. *Id.* ¶ 212. In addition, according to the SAC, Defendants' misuse of BBK's intellectual property and Defendants' false advertising is deceiving and confusing consumers and is causing harm—including irreparable harm and damages—to BBK. *Id.* ¶¶ 9, 294, 297.

In turn, BBK alleges claims against Defendants, including AIMS, for: (1) Federal Trademark Infringement under 15 U.S.C. § 1114(1)(a), Lanham Act § 32(1); (2) Trade Dress Infringement under 15 U.S.C. § 1114(1)(a), Lanham Act § 32(1); (3) False Designation of Origin

1  and Unfair Competition under 15 U.S.C. § 1125(a)(1)(A), Lanham Act § 43(a); (4) False

2  Advertising under 15 U.S.C. § 1125(a)(1)(B), Lanham Act § 43(a); (5) Violation of the Nevada

3  Deceptive Trade Practices Act under NRS § 41.600(e) and NRS § 598.0915; (6) Nevada common

4  law Trademark Infringement and Unfair Competition; and (7) Copyright Infringement under 17

5  U.S.C. § 501 et seq. *Id.* ¶¶ 229–391. BBK sought a preliminary and permanent injunction

6  prohibiting Defendants from engaging in this conduct in the future, a mandatory injunction for the

7  destruction of the alleged infringing products, damages, attorneys' fees, and costs. *Id.* at 58–60.

8        As to AIMS, whom BBK seeks default judgment and a permanent injunction against in

9  the present motions before the Court, BBK filed affidavits attesting to service of the summons on

10  AIMS on October 13, 2022. ECF Nos. 7 and 8. On February 22, 2023, AIMS accepted service of

11  the first-amended complaint. ECF No. 47. A certificate of service attesting that BBK had served

12  the SAC on AIMS was filed with the Court on April 4, 2024. ECF No. 129. AIMS did not answer

13  or otherwise respond to the complaint, first-amended complaint, or SAC.

14        **B. BBK's Prior Motions and the Court's Prior Orders**

15        The filings related to the present motions before the Court are numerous. In sum, BBK has

16  moved, separately, for default judgment and a permanent injunction against Defendants Florida

17  One, BOPL, and AIMS ("the Defaulting Defendants"). The Court has issued various orders,

18  reports and recommendations, and judgments regarding these motions. The Court summarizes the

19  prior filings as to each of the three defendants below.

20        As to Florida One, BBK moved for default judgment and a permanent injunction at ECF

21  Nos. 88 and 92, respectively. In these motions, BBK sought monetary damages against Florida

22  One in the amount of $877,181.47 for disgorgement of profits and $10,000.00 for attorney's fees.

23  ECF No. 92 at 17–18. BBK further sought an award of $4,283,300.00 for corrective advertising

24  expenses against all Defendants "found liable," as well as an award of $1,350,000.00 for statutory

25  damages against Florida One. *Id.* at 21–24. The district judge in this case, Judge Navarro, granted

26  BBK's motions and ordered judgment against Florida One in the amount of $877,181.47. ECF

27  No. 122 at 16.

28

However, Judge Navarro denied BBK's request regarding corrective advertising expenses, statutory damages, and attorney's fees without prejudice because she could not determine whether the amount sought was proportional to the Defendants' conduct. *Id.* at 13. Given the information in BBK's motions, Judge Navarro could not determine whether the award sought included conduct by Defendants NEPA Wholesale Inc. and NEPA 2 Wholesale Inc. ("the NEPA Parties"), whom BBK had entered into a settlement agreement with. *Id.* at 13–14; *see also* ECF No. 108 (Order Granting Stipulated Judgment as to BBK and the NEPA Parties). She further found that BBK's request for statutory damages and attorney's fees suffered from the same problem. *Id.* at 14. Accordingly, Judge Navarro ordered that BBK renew its motion on the issue of these remaining damages. BBK did just that in its motion at ECF No. 134, presently before the Court.

As to BOPL, BBK moved for default judgment and a permanent injunction at ECF Nos. 112 and 114, respectively. In these motions, BBK sought monetary damages against BOPL in the amount of $905,909.74 for disgorgement of profits and $10,000.00 for attorney's fees. ECF No. 112 at 18. BBK further sought an award of $4,283,300.00 for corrective advertising expenses against all Defendants "found liable" as well as an award of $1,350,000.00 for statutory damages against BOPL. *Id.* at 21–24. The undersigned recommended that BBK's motions be granted and judgment entered against BOPL in the amount of $905,909.74. ECF No. 125 at 17.

However, for the same reasons that Judge Navarro explained in her order at ECF No. 122, the undersigned recommended that BBK's request for corrective advertising expenses, statutory damages, and attorney's fees be denied without prejudice. *Id.* at 14–15. The undersigned further recommended that BBK be allowed to file a renewed motion on the issue of remaining damages. *Id.* at 17. Judge Navarro adopted this report and recommendation in its entirety. ECF No. 127.

As to AIMS, BBK first moved for default judgment and a permanent injunction at ECF Nos. 116 and 118. In those motions, BBK sought monetary damages against AIMS in the amount of $1,225,566.44 for disgorgement of profits and $10,000.00 for attorney's fees. ECF No. 118 at 19. BBK further sought an award of $4,283,300.00 for corrective advertising expenses against all Defendants "found liable" as well as an award of $1,950,000.00 for statutory damages against AIMS. *Id.* at 19, 23. The undersigned recommended that BBK's motions be denied without

prejudice because no default had been entered on the first-amended complaint (the operative complaint at the time). ECF No. 124 at 2. Judge Navarro adopted this report and recommendation in full. ECF No. 127.

On April 22, 2024, after AIMS failed to respond to the SAC (the operative complaint), BBK moved for entry of clerk's default on the SAC. ECF No. 131. The clerk granted this request and entered default as to AIMS on May 8, 2024. ECF No. 132. AIMS has not moved to set aside the entry of default, responded to the SAC, or otherwise appeared. Subsequently, BBK renewed its motions for default judgment and permanent injunction against AIMS. ECF Nos. 138 and 140. No responses have been filed.

Additionally, BBK renewed its motion regarding the corrective advertising expenses, statutory damages, and attorney's fees that the Court previously denied without prejudice. In its motion, BBK states that it is entitled to $1,950,000.00 in statutory damages under the Copyright Act and $4,283,300.00 in actual damages under the Lanham Act, for a total amount of $6,233,300.00, against the Defaulting Defendants. ECF No. 134 at 5–6. However, BBK only seeks $5,673,300.00 from the Defaulting Defendants due to the settlement with the NEPA Parties. *Id.* at 7. "To provide the most general reduction to the joint and several liability of BOPL, AIMS, and Florida One, BBK suggests that the entire settlement amount to be paid by the NEPA Parties be applied against the joint and several liability of the Defaulting Defendants." *Id.*

As to its request for attorney's fees, the Court ordered BBK to file a supplement. ECF No. 145. While the Court did not doubt that BBK's request for $10,000 in attorney's fees for each of the Defaulting Defendants was reasonable, it required information regarding the number of hours expended by the attorneys in this case as to each Defaulting Defendant, the general subject matter of the time expenditures, and the rates charged. *Id.* BBK filed a supplemental declaration with this information at ECF No. 146.

The Court begins with BBK's renewed motions for default judgment and permanent injunction against AIMS (ECF Nos. 138 and 140) before turning to BBK's renewed motion regarding corrective advertising expenses, statutory damages, and attorney's fees (ECF No. 134).

1
2

**II.    BBK's Motions for Default Judgment and Permanent Injunction Against AIMS**
### A.  Default Judgment
#### 1.  Legal Standard

3     Obtaining default judgment is a two-step process governed by Rule 55 of the Federal

4    Rules of Civil Procedure. *See Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986). First, the

5    moving party must seek an entry of default from the clerk of court. Fed. R. Civ. P. 55(a). Entry of

6    default is only appropriate when a party "has failed to plead or otherwise defend." *Id.*

7    Additionally, the Rule 55(a) advisory note indicates that it is inappropriate to enter a default

8    against a party who has indicated their intent to defend. *Id.* After the clerk enters the default, a

9    party must then separately seek entry of default judgment from the court in accordance with Rule

10   55(b). Upon entry of a clerk's default, the court takes the factual allegations in the complaint as

11   true, except those relating to the amount of damages. *See TeleVideo Sys., Inc. v. Heidenthal*, 826

12   F.2d 915, 917–18 (9th Cir. 1987) (per curiam).

13     Courts must examine both subject matter and personal jurisdiction when default judgment

14   is sought against a non-appearing party. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).

15   Additionally, in determining whether to grant default judgment, courts are guided by the

16   following seven *Eitel* factors: (1) the possibility of prejudice to the plaintiff, (2) the merits of the

17   plaintiff's substantive claims, (3) the sufficiency of the complaint, (4) the sum of money at stake

18   in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was

19   due to excusable neglect, and (7) the strong public policy favoring decisions on the merits. *Eitel*,

20   782 F.2d at 1471–72.

#### 2.  Discussion

21
22     As an initial matter, BBK has met the first step of the two-step process for obtaining

23   default judgment. Pursuant to Rule 55(a), the Clerk of the Court correctly entered default against

24   AIMS because it did not appear in the case. *See* ECF No. 132. Thus, the Court, in its discretion,

25   may order a default judgment after an analysis of jurisdiction and a balance of the *Eitel* factors.

26     This Court has original subject-matter jurisdiction over the federal law claims under 28

27   U.S.C. §§ 1331, 1332, 1338, and 2201 and 15 U.S.C. § 1121. Furthermore, diversity jurisdiction

28   exists over all claims (ECF No. 76 ¶¶ 10–17), as well as supplemental jurisdiction over the state-

law claims under 28 U.S.C. § 1367(a). Venue is proper in this Court pursuant to, inter alia, 28 U.S.C. §§ 1391 and 1400.

In addition, this Court may properly exercise personal jurisdiction over AIMS because BBK satisfies the minimum-contacts test and properly served AIMS. *Sec. & Exch. Comm'n v. Ross*, 504 F.3d 1130, 1138 (9th Cir. 2007) (citation omitted). Specific jurisdiction over a nonresident defendant is proper if three requirements are met:

> (1) the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the plaintiff's claim arises from the defendant's forum-related activities; and
> (3) the exercise of jurisdiction over the defendant is reasonable.

*Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002).

First, the SAC alleges that AIMS purposefully directed its activities in Nevada by offering for sale "BroCone" products in Nevada and elsewhere and collaborated with NEPA in its business activities in Nevada. ECF No. 76 ¶ 26. In addition, BBK alleges that AIMS conducted business activities in Nevada by (1) appearing at and participating in the TPE trade show held in Las Vegas, Nevada on May 12-14, 2021, where AIMS offered for sale and/or sold a wide variety of "BroCone" branded products to retailers, including retailers located in Nevada, (2) collaborating with NEPA and its operation of a website located at <brocone.com>, including the sale of "BroCone" products, (3) marketing and promoting products through the Instagram social-media application using the handle @brocone.official, which directs consumers to NEPA's interactive website, where customers may directly purchase "BroCone" products, and (4) informing consumers that NEPA is AIMS's distributor and directing customers to "FIND BROCONE @nepawholesale." *Id.* ¶¶ 26–27.

Second, the SAC alleges that the claims arising from AIMS's infringing conduct are related to Nevada. BBK explains that its trademark, trade dress, and copyright infringement claims and its false advertising claims are based on the promotion and sale, including the promotion and sale in Nevada, of "BroCone" branded products that AIMS marketed, promoted, and sold in Nevada (and elsewhere), including at Las Vegas trade shows, where AIMS promoted

the products and arranged sales of the products to retailers, including retailers located in Nevada. *Id.*

Third, exercising jurisdiction over AIMS is reasonable because AIMS intentionally appeared in Nevada to promote and sell the Infringing Products. *Id.* ¶ 27. Moreover, AIMS had fair warning that its activities involved the promotion and sale of the infringing "BroCone" branded products could subject AIMS to this Court's jurisdiction. *Id.*

AIMS received proper service of the Summons and the initial complaint when AIMS's authorized representative accepted service of both. ECF Nos. 7 and 8. AIMS received proper service of the SAC under Federal Rule of Civil Procedure 5 when counsel for BBK caused it to be mailed to AIMS's last-known address, to the attorney who signed an earlier stipulation for an extension of time to respond on behalf of AIMS (ECF No. 10), to AIMS's counsel in its bankruptcy proceeding, and to the Trustee appointed by the bankruptcy court. ECF No. 129. The Clerk entered AIMS's default as to the SAC on May 8, 2024, after AIMS failed to respond to the SAC. ECF No. 132.

Turning to the *Eitel* factors, these factors, as discussed in further detail below, weigh in favor of the requested default judgment.

### i. Possibility of Prejudice to the Plaintiff

The first *Eitel* factor the Court considers is the possibility of prejudice to the plaintiff. A defendant's failure to respond or otherwise appear in a case "prejudices a plaintiff's ability to pursue its claims on the merits." *See, e.g.*, *Nationstar Mortg. LLC v. Operture, Inc.*, No: 2:17-cv-03056-GMN-PAL, 2019 WL 1027990, at *2 (D. Nev. Mar. 4, 2019); *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("If Plaintiffs' motion for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery."). BBK will also suffer prejudice with no recourse to prevent further infringement. *See Levi Strauss & Co. v. Toyo Enter. Co., Ltd.*, 665 F. Supp. 2d 1084, 1095 (N.D. Cal. 2009) (finding factor satisfied where trademark plaintiff alleged inability "to prevent continued infringement and dilution"). As a result, this factor weighs in favor of default judgment.

*ii.    Plaintiff's Substantive Claims and the Sufficiency of the Complaint*

The second and third factors focus on the merits of Plaintiff's substantive claims and the sufficiency of the complaint. *See Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986). These factors, often analyzed together, require courts to determine whether a plaintiff has "state[d] a claim on which [it] may recover." *PepsiCo*, 238 F. Supp. 2d at 1175. Courts often consider these factors "the most important." *Vietnam Reform Party v. Viet Tan – Vietnam Reform Party*, 416 F. Supp. 3d 948, 962 (N.D. Cal. 2019). If a district court has "serious reservations" about the merits of a plaintiff's claims based on the pleadings, these factors weigh in favor of denying default judgment. *See Eitel*, 782 F.2d at 1472. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "Where the allegations in a complaint are not 'well-pleaded,' liability is not

established by virtue of the defendant's default and default judgment should not be entered." *See Adobe Sys., Inc. v. Tilley*, No. C09-1085 PJH, 2010 WL 309249, at *3 (N.D. Cal. Jan. 19, 2010). As explained in detail below, these two factors weigh in favor of default judgment as to all claims alleged in the SAC.

*a.    Trademark Infringement*

To prevail on a trademark infringement claim, a plaintiff must show: "(1) it has a valid, protectable mark; and (2) the defendant's use of the mark is likely to cause consumer confusion." *OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.*, 897 F.3d 1008, 1022 (9th Cir. 2018). Courts use several factors to determine whether there will be a likelihood of confusion, including: the strength of the mark, the proximity of the goods, the similarity of the marks, the evidence of actual confusion, the marketing channels used, the type of goods and degree of care likely to be exercised by the purchaser, the defendant's intent in selecting the mark, and the likelihood of expansion of product lines. *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979), *abrogated in part on other grounds by Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792 (9th Cir. 2003).

BBK claims that it is the owner of the federally registered trademarks and attached the U.S. Trademark Registration Certificates to its Complaint. ECF No. 76 ¶¶ 36–37, 41, 69–71, Exs. B and C. The SAC alleges Defendants' use of these marks is likely to cause confusion. *Id.* ¶¶ 169, 201, 218, 241, 251, 269, 291, 297, 326.) To begin, BBK alleges that it owns, and has used since 2017, the RAW Cone Bro™ name as a trademark for a RAW™-brand smoking product. *Id.* ¶¶ 94–97. In addition, BBK alleges that it owns "THE NATURAL WAY TO ROLL" slogan (the "RAW®-Brand Product Slogan"), which has been used since 2007 and was registered with the PTO as a trademark for use with BBK rolling papers since 2011. *Id.* ¶¶ 109–112.)

Years later, AIMS began selling rolling papers and cones using the name "BroCone" on packaging and advertising of the products. *Id.* ¶ 141. AIMS's "BroCone" rolling-paper products copy verbatim and misuse the RAW®-Brand Product Slogan. *Id.* ¶¶ 179–191. In sum, AIMS, which is in direct competition with BBK, sells "BroCone" rolling papers and cones identical to the RAW™-Brand Products, using a product name and slogan in packaging designs that are identical or nearly identical to the RAW Cone Bro™ name, the RAW®-Brand Product Slogan, and the RAW™- Brand Trade Dress. *See id.* ¶¶ 128, 164–167, 186, 190–191, 247, 374–375, 381. The marketing and sales of the "BroCone" Products using the "BroCone" brand occur in some of the same marketing and sales locations as the RAW™-Brand products that use BBK's RAW Cone Bro™ name, RAW®-Brand Product Slogan, and RAW™-Brand Trade Dress. *Id.* ¶¶ 198, 215.

In addition, Defendants' use of the "BroCone" name, the "BroCone" Package and Box Graphic Designs, and the slogan "The NATURAL WAY TO ROLL" have actually confused and/or deceived consumers, diverting sales from BBK's RAW™-Branded Products to Defendants' competing "BroCone" products. *Id.* ¶¶ 246, 269, 274–275, 291–292, 331–332, 355. These allegations sufficiently plead the elements of trademark infringement, but the Complaint does not specify in what ways each Defendant is alleged to have infringed on BBK's trademarks. Courts in the Ninth Circuit have found pleadings to be insufficient when a plaintiff sues multiple defendants without specifying which defendant is liable for which cause of action. *See, e.g.,*

1   *Dougherty v. Bank of Am., N.A.*, 177 F. Supp. 3d 1230, 1253 (E.D. Cal. 2016) (stating that when

2   defendants are referenced collectively under "cause of action" in the complaint, pleading must

3   detail adequate facts against each defendant); *Friedman v. Zimmer*, No. CV 15–502 GHK, 2015

4   WL 6164787, at *2 (C.D. Cal. July 10, 2015) (noting that lumping defendants together may

5   violate Rule 8 when "the pleadings are largely incomprehensible").

6           Here, though the Complaint does not specify exactly how each Defendant engaged in

7   trademark infringement, the SAC's factual allegations allow the Court to draw a reasonable

8   inference that AIMS is liable for the misconduct alleged. *See Reflex Media, Inc. v. Richard*

9   *Easton Ltd.*, No. 2:20-cv-00051-GMN-EJY, 2023 WL 6119950 at * 5 (D. Nev. Sept. 15, 2023)

10  (finding reasonable inferences could be drawn despite lack of specificity in the complaint). This is

11  based on BBK's allegation that AIMS sells "BroCone" products through attendance at

12  tradeshows and through its collaboration with NEPA, which itself sells "BroCone" products. ECF

13  No. 76 ¶¶ 25–27. In addition, BBK maintains that AIMS imports "BroCone" products into the

14  United States from Defendant BOPL and promotes NEPA as AIMS's U.S. distributor of

15  "BroCone" products. *Id.* ¶¶ 26–29.

16                              *b.   Trade Dress Infringement*

17          A claim for trade dress infringement also requires the plaintiff's ownership of distinctive

18  trade dress and a likelihood of confusion, but it requires the additional elements that the claimed

19  trade dress be nonfunctional. *See Talking Rain Beverage Co. Inc. v. S. Beach Beverage Co.*, 349

20  F.3d 601, 603 (9th Cir. 2003) (citing elements of proof as: "(1) non-functionality, (2)

21  distinctiveness, and (3) likelihood of confusion"). BBK alleges that it uses a distinctive trade

22  dress for the packaging of RAW®-brand rolling paper and RAW™-brand pre-rolled cones. ECF

23  No. 76 ¶¶ 40–42, 69–71, 80–81, Ex. B. The SAC describes that trade dress extensively and

24  defines those designs as the "RAW™- Brand Trade Dress." *Id.* ¶¶ 43–93. The RAW™-Brand

25  Trade Dress is inherently distinctive and has acquired distinctiveness through nearly two decades

26  of continuous and extensive use in commerce as an indicator of the source of RAW™-Brand

27  Products to the consuming public. *Id.* ¶¶ 57, 83–85. The RAW™-Brand Trade Dress serves as a

28  symbol of the quality of the products packaged in the RAW™-Brand Trade Dress and has

1    garnered significant goodwill in the marketplace for RAW™-Brand Products. *Id.* ¶ 93. BBK has

2    registered some of the RAW™-Brand Trade Dresses with the PTO. *Id.* ¶¶ 69–71.

3        According to BBK, Defendants are knowingly promoting and selling "BroCone" products

4    using packaging designs (the "'BroCone' Package and Box Graphic Designs") similar in visual

5    appearance to the designs of the RAW™-Brand Trade Dress. *Id.* ¶¶ 150–153, 164–169, 270, Ex.

6    F. The combined textual and graphic elements of the BroCone Package and Box Graphic Designs

7    create the same overall visual impression as the RAW™-Brand Trade Dress, such that consumers

8    are confused. *Id.* ¶ 274. The same analysis above regarding likelihood of confusion as to the

9    trademark infringement claim applies here as well.

10       In addition, BBK's RAW™-Brand Trade Dress is nonfunctional and distinctive. *Id.* ¶¶ 88,

11   80–84. Here, though the Complaint does not specify exactly how each Defendant engaged in

12   trade dress infringement, the SAC's factual allegations allow the Court to draw a reasonable

13   inference that AIMS is liable for the misconduct alleged. *See supra* Section II.A.2.ii.a.

14                    *c.   False Designation of Origin and Unfair Competition*

15       To prevail on a claim of false association or false designation of origin, a plaintiff must

16   show that:

17       (1) defendant uses a designation (any word, term, name, device, or any combination
         thereof) or false designation of origin; (2) the use was in interstate commerce; (3) the use
18       was in connection with goods or services; (4) the designation or false designation is likely
         to cause confusion, mistake, or deception as to (a) the affiliation, connection, or
19       association of defendant with another person, or (b) as to the origin, sponsorship, or
         approval of defendant's goods, services, or commercial activities by another person; and
20       (5) the plaintiff has been or is likely to be damaged by these acts.

21   *United Tactical Sys., LLC v. Real Action Paintball, Inc.*, 143 F. Supp. 3d 982, 1015 (N.D. Cal.

22   2015). As alleged in the SAC, Defendants' use of the "BroCone" brand name, the "BroCone"

23   Package and Box Graphic Designs, and the slogan "THE NATURAL WAY TO ROLL" on

24   packaging and advertising for, and/or to identify the "BroCone" Products, including use on

25   packaging and instore displays, constitutes a false designation of origin that has caused, or is

26   likely to cause, confusion, mistake, and deception as to the affiliation, connection, or association

27   between the "BroCone" Products and the RAW™-Brand Products and commercial activities of

28   BBK. ECF No. 76 ¶ 291. Further, the use was in interstate commerce. *Id.* ¶ 309. Moreover, the

use injures BBK's commercial interest in its reputation and reduces BBK's sales of its products. *Id.* ¶ 294. Here, though the Complaint does not specify how each Defendant engaged in False Designation of Origin and Unfair Trade, the SAC's factual allegations allow the Court to draw a reasonable inference that AIMS is liable for the misconduct alleged. *See supra* Section II.A.2.ii.a.

### d.  False Advertising

To establish a false advertising claim under Section 43(a) of the Lanham Act, a plaintiff must prove "that the defendant made a material false statement of fact in a commercial advertisement and that the false statement deceived or had a tendency to deceive a substantial segment of its audience." *Muzikowski v. Paramount Pictures Corp.*, 477 F.3d 899, 907 (7th Cir. 2007). A plaintiff asserting a false advertising claim must allege that its injury (1) is within the "zone of interests" protected by the Lanham Act, and (2) was proximately caused by defendant's violation of the Lanham Act. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127–30 (2014). "[T]o come within the zone of interests in a suit for false advertising under § 1125(a), a plaintiff must allege an injury to a commercial interest in reputation or sales." *Id.* at 131–32. To demonstrate proximate cause, "a plaintiff suing under § 1125(a) ordinarily must show economic or reputation injury flowing directly from the deception wrought by the defendant's advertising, and that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Id.* at 133.

The SAC alleges that AIMS made false statements of fact about "BroCone" products in a commercial advertisement. ECF No. 76 ¶¶ 223–227, 233–237, 305–309. In addition, it alleges that these false statements deceived or had a tendency to deceive a substantial segment of its audience. *Id.* ¶ 307. It also alleges that the deception is material. *Id.* ¶ 308. In addition, it claims that the false statements entered interstate commerce and that BBK has been or is likely to be injured as a result of the false statements, either by Defendants' diversion of sales from BBK to Defendants or by lessening of the goodwill associated with BBK's products. *Id.* ¶¶ 241, 309–312. Lastly, it alleges that these statements have caused substantial and irreparable damage and injury to BBK. *Id.* ¶¶ 241, 312, 314–316.

1    Here, though the Complaint does not specify how each Defendant engaged in false

2    advertising, the SAC's factual allegations allow the Court to draw a reasonable inference that

3    AIMS is liable for the misconduct alleged. *See supra* Section II.A.2.ii.a.

4                        *e.   Nevada Deceptive Trade Practices Act*

5    Under Nevada's Deceptive Trade Practices Act ("DTPA"), a defendant is liable if it:

6    [k]nowingly passes off goods or services for sale or lease as those of another person. . . .
     [u]ses deceptive representations or designations of geographic origin in connection with
7    goods or services for sale or lease . . . makes a false representation as to the
     characteristics, ingredients, uses, benefits, alterations or quantities of goods or services for
8    sale or lease or a false representation as to the sponsorship, approval, status, affiliation, or
     connection of a person therewith . . . [or] [r]epresents that goods or services for sale or
9    lease are of a particular standard, quality or grade, or that such goods are of a particular
     style or model, if he or she knows or should know that they are of another standard,
10   quality, grade, style or model.

11   Nev. Rev. Stat. § 598.0915(1), (4), (5), and (7). The DTPA provides that "[e]vidence that a

12   person has engaged in a deceptive trade practice is prima facie evidence of intent to injure

13   competitors and to destroy or substantially lessen competition." *Id.* § 598.0953(1). Thus, "a

14   business shown to be engaged in deceptive trade practices is presumed to intend for those

15   practices to injure its competitors and destroy competition." *S. Serv. Corp. v. Excel Bldg. Servs.,*

16   *Inc.*, 617 F. Supp. 2d 1097, 1099 (D. Nev. 2007).

17       BBK's SAC alleges that Defendants acted with the express intent of deceiving consumers

18   and injuring BBK. ECF No. 76 ¶¶ 331–332, 347–348. Furthermore, it alleges that Defendant

19   AIMS's false statements, and the similarity between the "BroCone" name, the "BroCone"

20   Package and Box Graphic Designs, and the use of "THE NATURAL WAY TO ROLL" slogan,

21   on the one hand, and BBK's RAW Cone Bro™ name, RAW™-Brand Trade Dress, RAW®-

22   Brand Product Slogan, on the other hand, is so great that consumers have been deceived and

23   confused and have, as a result, withheld trade from BBK. *Id.* ¶¶ 248, 271, 294, 316, 328, 352,

24   386. While the SAC does not specify how each Defendant engaged in deceptive trade practices,

25   its factual allegations allow the Court to draw a reasonable inference that AIMS is liable for the

26   misconduct alleged. *See supra* Section II.A.2.ii.a.

27   / /

28   / /

1

*f.   Common Law Trademark Infringement and Unfair Competition*

2      The elements of common law claims for trademark infringement and unfair competition

3   mirror the federal standard. *CarFreshner Corp. v. Valio, LLC*, 2016 WL 7246073, *7 (D. Nev.

4   Dec. 15, 2016); *46 Labs, LLC v. Parler LLC*, 2022 WL 2974121, at *5 (D. Nev. July 27, 2022);

5   *see also Grey v. Campbell Soup Co.*, 650 F. Supp. 1166, 1173 (C.D. Cal. 1986), *aff'd*, 830 F.2d

6   197 (9th Cir. 1987) ("The tests for infringement of a federally registered mark under § 32(1), 15

7   U.S.C. § 1114(1), infringement of a common law trademark, unfair competition under § 43(a), 15

8   U.S.C. § 1125(a), and common law unfair competition involving trademarks are the same:

9   whether confusion is likely."). As a result, the Court refers to its analysis above for its finding that

10  a reasonable inference can be made that AIMS is liable for the alleged misconduct. *See supra*

11  Section II.A.2.ii.a.

12

*g.   Copyright Infringement*

13     "To state a claim for copyright infringement, [Plaintiff] must plausibly allege two things:

14  (1) that [he] owns a valid copyright in [the works], and (2) that [Defendants] copied protected

15  aspects of [Plaintiff's works]." *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1116–17 (9th Cir.

16  2018) (citations omitted), *overruled on other grounds in Skidmore as Tr. for Randy Craig Wolfe*

17  *Tr. v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020). BBK alleges that it owns the

18  copyrighted works. ECF No. 76 ¶¶ 98–108, 371–372, Ex. E. It also alleges that Defendants

19  copied Plaintiff's copyrighted work. *Id.* ¶¶ 165–168, 171–173, 374, Ex F. Here, though the

20  Complaint does not specify how each Defendant engaged in copyright infringement, the SAC's

21  factual allegations allow the Court to draw a reasonable inference that AIMS is liable for the

22  misconduct alleged. *See supra* Section II.A.2.ii.a.

23

*iii.   The Sum of Money at Stake in the Action*

24     The fourth *Eitel* factor addresses the damages at stake in the action. *See Eitel v. McCool*,

25  782 F.2d 1470, 1471 (9th Cir. 1986). The Court considers "the amount of money requested in

26  relation to the seriousness of the defendant's conduct, whether large sums of money are involved,

27  and whether 'the recovery sought is proportional to the harm caused by [the] defendant's

28  conduct.'" *Next Gaming, LLC v. Glob. Gaming Grp., Inc.*, No. 2:14-cv-00071-MMD-CWH, 2016

WL 3750651, at *3 (D. Nev. July 13, 2016) (quoting *Landstar Ranger, Inc. v. Parth Enters.*, Inc., 725 F. Supp. 2d 916, 921 (N.D. Cal. 2010)). BBK seeks monetary damages from AIMS for trademark and trade dress violations and false advertising claims in the form of an award of $1,225,566.44 for disgorgement of profits. "[D]isgorgement of profits is a traditional trademark remedy." *Jerry's Famous Deli, Inc v. Papanicolaou*, 383 F.3d 998, 1004–05 (9th Cir. 2004). Moreover, a plaintiff is entitled to the amount of the defendant's gross sales unless the defendant adequately proves amount of costs to be deducted from it. *Am. Honda Motor Co. v. Two Wheel Corp.*, 918 F.2d 1060, 1063 (2d Cir. 1990); *see also Polo Fashions, Inc. v. Dick Bruhn, Inc.*, 793 F.2d 1132, 1135 (9th Cir. 1986) (awarding receipts from sale pursuant to 15 U.S.C. § 1117(a)). The Declaration of J. Alex Grimsley asserts that AIMS's total estimated gross revenue from sales of the BroCone-branded Products comes to $1,225,566.44. *See* ECF No. 139 at 2, Ex. A. Taking the SAC's factual allegations as true, BBK alleges sufficient facts for the Court to reasonably infer that AIMS infringed on BBK's trademark and trade dress and that it is liable for false adverting. This is a large sum, but it equals the gains from the infringing conduct and is in direct proportion to the harm caused.

BBK also seeks awards of $4,283,300.00 for corrective advertising expenses and $1,950,000.00 in statutory damages jointly and severally from the Defaulting Defendants. ECF No. 134 at 5–9 (BBK's Renewed Motion for Entry of Default Judgments to Address Joint and Several Liability and Other Matters). Though these awards total $6,233,300.00, BBK seeks $5,673,300.00 due to the settlement with the NEPA Parties. *Id.* at 7. In its motion, BBK explained that it subtracted the entire settlement amount to be paid by the NEPA Parties against the $6,233,300.00 total. *Id.* Therefore, the amounts sought do not include the conduct of the NEPA parties, and the Court's prior concerns that BBK would be getting an award above what is due are allayed. *See* ECF No. 134 at 7.

As to the corrective advertising damages sought, plaintiffs may recover compensatory damages in the form of prospective advertising costs to restore the value a plaintiff's trademarks have lost due to a defendant's infringement. *Adray v. Adry-Mart, Inc.*, 76 F.3d 984, 988–89 (9th Cir. 1995), *as amended on denial of reh'g* (Feb. 15, 1996). Taking the SAC's factual allegations

as true, BBK alleges sufficient facts for the Court to reasonably infer that the Defaulting

Defendants' infringement damaged BBK's business, reputation, and goodwill. *See* ECF 76-1 at

38–47. Additionally, the Declaration of J. Alex Grimsley asserts that BBK's estimated cost of

corrective marketing expenses over a twelve-month period is $4,283,300.00. ECF No. 135 at 2.

Attached to the Declaration is a copy of a spreadsheet produced by BBK that details the monthly

costs associated with corrective advertising. *Id.*, Ex. A. Though $4,283,300.00 is a very large

sum, it is equal to the amount required to correct the damage caused to BBK's reputation and

goodwill, and it is therefore in direct proportion to the harm caused by the Defaulting Defendants.

*See infra* Section III.A.1.

As to the statutory damages sought, Section 504(c) of the Copyright Act permits a

copyright owner to recover up to $150,000 in damages, per work infringed, in cases where the

court finds the infringement was willful. 17 U.S.C. § 504(c)(2); *Warner Bros. Ent. Inc. v. Caridi*,

346 F. Supp. 2d 1068, 1072 (C.D. Cal. 2004). Taking the SAC's factual allegations as true, BBK

alleges sufficient facts for the Court to reasonably infer that the Defaulting Defendants willfully

infringed the thirteen BBK copyrighted works.[1] ECF No. 76 at 55–59, Ex. E. This is a large sum,

but it is within the amount allowed by the statute and thus proportional to the Defaulting

Defendants' willful infringements of thirteen works under the Copyright Act. *See infra* Section

III.A.2.

Lastly, BBK seeks $10,000 in attorney's fees against each of the Defaulting Defendants.

ECF No. 134 at 8–9. As the Declaration of J. Alex Grimsley states, the attorney's fees BBK

incurred in seeking default against each Defaulting Defendant far exceeded the $10,000.00

sought. ECF No. 135 at 4–5. Moreover, as discussed below, the amount sought is below the

lodestar calculation, which is presumptively reasonable. *See infra* II.B. Therefore, the amount

sought for attorney's fees is reasonable and proportional to the Defaulting Defendants' conduct.

/ /

---

[1] These works are Registration Nos.: TX 6-626-247; VA 1-962-325; VA 1-961-856; VA 2-297-893; VA
2-297-888; VA 2-299-388; VA 2-320-129; VA 2-320-219; VA 2-313-563; VA 2-314-935; VA 2-299-673;
VA 2-320-503; and VA 2-317-293. ECF No. 135 at 4.

*iv.    Possibility of a Dispute Concerning Material Facts*

As stated above, once the Clerk of Court enters default, all well-pleaded facts in the complaint, except those relating to damages, are taken as true. *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Because the SAC contains well-pleaded facts alleging Federal Trademark and Trade Dress Infringement, False Designation of Origin and Unfair Competition, False Advertising, Violation of the Nevada Deceptive Trade Practices Act under NRS 41.600(e) and NRS 598.091, Nevada common law Trademark Infringement and Unfair Competition, and Copyright Infringement by Defendants (including AIMS), the possibility of a dispute concerning material facts is low. As a result, this factor weighs in favor of default judgment.

*v.    Excusable Neglect*

The sixth factor considers whether the Defendants' defaults are due to excusable neglect. If a defendant is "properly served with the complaint, the notice of entry of default, as well as the papers in support of the instant motion," the default "cannot be attributed to excusable neglect." *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001). It is unlikely that the defaults are due to excusable neglect in this case. As discussed above, BBK properly served AIMS. ECF Nos. 7, 8, 47, 129. As a result, this factor weighs in favor of default judgment.

*vi.    Policy for Decisions on the Merits*

As the Ninth Circuit in *Eitel* explained, "default judgments are ordinarily disfavored." *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986). "Cases should be decided upon their merits whenever reasonably possible." *Id.* This public policy factor weighs against default judgment. Nonetheless, evaluating all seven *Eitel* factors as applied to this case, the Court finds that the majority of the factors weigh in favor of default judgment. Therefore, considering all the Eitel factors, the Court finds, in its discretion, that entering a default judgment in this case is appropriate, consistent with this recommendation.

/ /

/ /

### B. Permanent Injunction

BBK also seeks a permanent injunction prohibiting AIMS from infringing on its intellectual property rights. ECF No. 140. "[A] permanent injunction may be entered where the plaintiff shows: '(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of the hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.'" *La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 879 (9th Cir. 2014). Injunctive relief is almost always appropriate in trademark and unfair competition cases, "since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988).

Here, the Court finds that a permanent injunction is appropriate. First, BBK has suffered and will continue to suffer irreparable injury (including to its goodwill) without a permanent injunction. Second, remedies at law (including monetary damages) are inadequate to compensate BBK for the ongoing damage that it will suffer if the infringement is allowed to continue. Third, considering the balance of the hardships between BBK and AIMS, a permanent injunction is still warranted. Simply put, AIMS has no right to infringe on BBK's intellectual property. Fourth, the public interest is not disserved by a permanent injunction. To the contrary, the public will be served by a permanent injunction that prevents confusion about the source of BBK's and Defendants' goods. Accordingly, a permanent injunction that prohibits AIMS from continuing to infringe on BBK's intellectual property is warranted. The Court therefore recommends that BBK's request for a permanent injunction be granted as follows:

Pursuant to 15 U.S.C. § 1116, 17 U.S.C. § 502, and Rule 65(d) of the Federal Rules of Civil Procedure, AIMS, its employees, officers, directors, agents, successors, and assigns, and all other persons or entities acting in active concert or participation with any of them, are hereby permanently enjoined from

    a. using in commerce the "BroCone" name, "BroCone" Product Packaging and/or "THE NATURAL WAY TO ROLL" slogan or any product packaging, box, in-

store display or design, advertising or slogan incorporating or confusingly similar
to the RAW™-Brand Trade Dress, the RAW®-Brand Product Slogan, and/or the
RAW Cone Bro™ name;

b. using in commerce the Origin Statement, and the Watermark Statement, or
any other false or deceptive commercial statements in advertising and/or on
"BroCone" Product Packaging;

c. using or creating any work, including but not limited to any derivative works,
with designs identical or substantially similar to any of the RAW™-Brand Graphic
Design Copyrights;

d. Engaging in any other conduct which will cause, or is likely to (1) cause,
confusion, mistake, deception, or misunderstanding as to the affiliation,
connection, association, origin, sponsorship, or approval of AIMS's business or
"BroCone" Products with RAW™-Brand Products or other or products made by
BBK; (2) use, without authorization from BBK, any RAW™-Brand Graphic
Design Copyrights; or (3) deceive or confuse consumers; and

e. otherwise infringing upon the RAW™-Brand Trade Dress, the RAW®-
Brand Marks, the RAW®-Brand Product Slogan, of the RAW Cone Bro™ name,
falsely or deceptively advertising, or unfairly competing with BBK in any manner
whatsoever.

AIMS must immediately do the following:

a. recall and destroy all products, written materials, publications, labels, packages,
boxes, in-store displays, advertisements and other materials that infringe (i) the
RAW™-Brand Trade Dress, the RAW®-Brand Marks, THE NATURAL WAY
TO ROLL slogan, or the RAW Cone Bro™ name, or otherwise are likely to
confuse or to mislead consumers in the United States, and/or (ii) any RAW™-
Brand Graphic Design Copyrights;

b. recall and destroy all products, written materials, publications, labels,

packages, boxes, in-store displays, advertisements, and other material displaying

the Origin Statement, the Watermark Statement, and/or any other false or

deceptive commercial advertising statement; and

c. file with the Court and serve upon BBK within thirty (30) days after entry

of the mandatory injunction a report in writing and signed under oath by respective

corporate officers of AIMS setting forth in detail the manner and form in which it

has complied with each of the terms of this Order, pursuant to 15 U.S.C. § 1116.

**III.    BBK's Renewed Motion for Judgment of Joint and Several Liability and Attorney's Fees Against Florida One, BOPL, and AIMS**

**A.  Joint and Several Liability**

"Courts have long held that in patent, trademark, literary property, and copyright

infringement cases, any member of the distribution chain can be sued as an alleged joint tort-

feasor." *Stabilisierungsfonds Fur Wein, et al. v. Kaiser Stuhl Wine Distributors Pty. Ltd., et al.*,

647 F.2d 200 (D.C. Cir. 1981) (internal citations omitted). Infringers of a copyright are jointly

and severally liable for statutory damages under Section 504(c)(1) of the Copyright Act. *Frank

Music Corp. v. Metro Goldwyn-Mayer, Inc.*, 772 F.2d 505, 519 (9th Cir. 1985), *rev'd in part on

other grounds*, 886 F.2d 1545 (9th Cir. 1989). Infringers may also be held jointly and severally

liable for a corrective advertising award. *See Adray v. Adry-Mart, Inc.*, 76 F.3d 984 (9th Cir.

1995), *as amended on denial of reh'g* (Feb. 15, 1996) ("An award of the cost of corrective

advertising, like compensatory damage awards in general, is intended to make the plaintiff

whole."); *see also Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1023 (9th Cir.

1985) ("Joint tortfeasors are jointly and severally liable for compensatory damages."). Here, the

Defaulting Defendants are jointly and severally liable for the corrective advertising costs and

statutory damages, as discussed in detail below.

**1.  Corrective Advertising Damages**

Corrective advertising damages allow a "plaintiff to recover the cost of advertising

undertaken to restore the value [a] plaintiff's trademark has lost due to [a] defendant's

infringement." *Adray*, 76 F.3d at 988 (citing *Zazu Designs v. L'Oreal, S.A.*, 979 F.2d 499, 506

1  (7th Cir. 1992)). The Ninth Circuit has further allowed an award for the cost of prospective

2  corrective advertising. *Id.* Ultimately, these damages strive to make a plaintiff whole. *Id.* While

3  prospective costs may present a danger of overcompensation because they can be difficult to

4  determine, "the burden of any uncertainty in the amount of damages should be borne by the

5  wrongdoer . . . ." *Id.* (citing *Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251, 265 (1945)).

6        Here, BBK alleges that Defendants manufacture, advertise, and sell "Brocone" products

7  that copy and misuse BBK's RAW Cone Bro® name, RAW®-Brand Product Slogan, RAW™-

8  Brand Trade Dress, and RAW™-Brand Graphic Design Copyrights. ECF No. 76 at 3, 22–35.

9  BBK further alleges that the confusion and deception caused by the similarity of Defendants'

10  products have injured BBK's trade dress and trademark rights, as well as its reputation.

11  Moreover, the Declaration of J. Alex Grimsley asserts that BBK's estimated corrective marketing

12  expenses over a 12-month period total $4,283,300.00. *See* ECF No. 135 at 2. Attached to this

13  Declaration is an exhibit of a workbook that BBK produced that details the expected corrective

14  advertising costs per month. *Id.*, Ex. A. Expenses include flyers/handouts at tradeshows,

15  storefront corrective advertising displays, and labor costs. *Id.*

16        Taking the SAC's factual allegations as true, BBK alleges sufficient facts for the Court to

17  reasonably infer that Defendants' products confused and/or deceived customers, therefore

18  injuring the value of BBK's trade dress and trademarks. While BBK seeks a very large sum, it has

19  supported its request with a Declaration and allocation of the prospective advertising costs. *See*

20  ECF No. 135 at 2, Ex. A. Because BBK has supported its request and none of the Defaulting

21  Defendants have contested it, the Court recommends that the request for corrective advertising

22  damages be granted. *See Adray v. Adry-Mart, Inc.*, 76 F.3d 984, 988 (9th Cir. 1995) ("[T]he

23  burden of any uncertainty in the amount of damages should be borne by the wrongdoer . . . .").

24          **2.  Statutory Damages**

25        Section 504(c) of the Copyright Act states that a copyright owner "may elect, at any time

26  before final judgment is rendered, to recover, instead of actual damages and profits, an award of

27  statutory damages for all infringements involved in the action, with respect to any one work." 17

28  U.S.C. § 504(c)(1). Specifically, it provides that "[i]n a case where the copyright owner sustains

the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000." *Id.* § 504(c)(2). "A plaintiff may elect statutory damages regardless of the adequacy of the evidence offered as to his actual damages and the amount of the defendant's profits." *Columbia Pictures Television, Inc. v. Krypton Broad. Birmingham, Inc.*, 259 F.3d 1186, 1194 (9th Cir. 2001). Moreover, "[t]he court has wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima." *Harris v. Emus Records Corp.*, 734 F.2d 1329, 1335 (9th Cir.1984).

Here, because of the entry of default, the Court must take BBK's allegations of willful infringement as true. *See* ECF No. 76 at 58. Therefore, BBK is entitled to an award of statutory damages. *See Warner Bros. Ent. Inc. v. Caridi*, 346 F. Supp. 2d 1068, 1073–74 (C.D. Cal. 2004). "Statutory damages are particularly appropriate in a case, such as this one in which [the] defendant has failed to mount any defense or to participate in discovery, thereby increasing the difficulty of ascertaining plaintiff's actual damages." *Jackson v. Sturkie*, 255 F.Supp.2d 1096, 1101 (N.D.Cal.2003).

BBK seeks the statutory maximum of $150,000 per work for thirteen works. ECF No. 134 at 6–7. The allegations supporting Defendants' willful infringement of the copyrighted works are particularly conspicuous. The Defendants and BBK are direct competitors in the rolling paper and pre-rolled cones market. ECF No. 76 at 56. Defendants had full knowledge of BBK's copyrighted works and still manufactured and sold products with substantially similar packaging and graphic designs to BBK's RAW™-Brand Graphic Design Copyrights. *Id.* In fact, the NEPA Parties, the only defendants who have appeared in this action, stipulated to entry of judgment that their infringement was willful. ECF No. 108 at 3. Given the Defaulting Defendants' conduct, which is compounded by failing to defend themselves or otherwise participate in the case, an award of the statutory maximum is warranted here. Therefore, the Court recommends an award of $150,000 per work for thirteen copyrighted works[2] for a total of $1,950,000.00.

---

[2] *Supra* n.1.

Finally, the Court recommends that, while BBK's corrective advertising costs and statutory damages request be granted in full ($6,233,300.00), this amount should be reduced by the amount of BBK's settlement award with the NEPA Parties. The Ninth Circuit has held "that the release of one tortfeasor does not release all other joint tortfeasors absent an agreement to effect such a release." *Avery v. United States*, 829 F.2d 817, 819 (9th Cir. 1987). However, a settlement with one defendant will reduce joint and several liability of the other, non-settling defendants. *See BUC Int'l Corp. v. Int'l Yacht Council Ltd.*, 517 F.3d 1271, 1278 (11th Cir. 2008). This is based on the tort principle that a plaintiff is entitled to only one recovery for a wrong. *Id.*

Here, the Defaulting Defendants are jointly and severally liable for any amount the Court awards for corrective advertising costs and statutory damages. *See supra* III.A. As the Declaration of J. Alex Grimsley stated, the settlement agreement between BBK and the NEPA Parties did not release any of the Defaulting Defendants. ECF No. 135 at 5. Moreover, the Court's judgment against the NEPA Parties expressly provided that it was without prejudice to BBK's claims against the Defaulting Defendants. ECF No. 108 at 6. To offset the settlement, BBK has reduced its total damages request by the full settlement amount paid by the NEPA Parties. ECF No. 134 at 7. BBK therefore moves the Court to order that the Defaulting Defendants are jointly and severally liable for $5,673,300.00. *Id.* The Court recommends that this request be granted.

### B.  Attorney's Fees

BBK seeks attorney's fees under 17 U.S.C. § 505 (the Copyright Act) and 15 U.S.C. § 1117(a) (the Lanham Act). "In applying [17 U.S.C. § 505], district courts are charged with two tasks: first, deciding whether an award of attorneys' fees is appropriate, and second, calculating the amount of fees to be awarded." *The Traditional Cat Ass'n, Inc. v. Gilbreath*, 340 F.3d 829, 832–33 (9th Cir. 2003). There are two separate tests for the court to consider when deciding whether to award attorney's fees under the Copyright Act and Lanham Act.

Starting with the Copyright Act, the Supreme Court of the United States has explained that district courts have broad leeway to award attorney's fees to a prevailing party. *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 202 (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 519

(1994)). However, the Supreme Court established some restrictions to this principle, including that a district court must make a case-by-case assessment and should consider the following nonexclusive factors: frivolousness, motivation, objective unreasonableness, and the need in particular circumstances to advance considerations of compensation and deterrence. *Id.* (citing *Fogerty*, 510 U.S. at 534 n. 19). As to the nonexclusive factors, the Supreme Court explained that district courts should give substantial weight to the reasonableness of a losing party's litigation positions while still considering all other relevant factors. *Id.* at 209. Additionally, the Ninth Circuit has added factors that "may be considered" but "need not all be met," including the degree of success obtained in the litigation and the purposes of the Copyright Act. *Glacier Films (USA), Inc. v. Turchin*, 896 F.3d 1033, 1038 (9th Cir. 2018).

Here, BBK is the prevailing party as the Court has entered default against the Defaulting Defendants. BBK has advanced the purposes of the Copyright Act by holding the Defaulting Defendants liable for their willful infringement of BBK's thirteen copyrighted works. An award of attorney's fees helps to deter this infringing behavior and to compensate BBK for protecting its rights. Moreover, given the Defaulting Defendants' failure to defend themselves, the Court cannot say whether their defense may have been frivolous or unreasonable. Therefore, considering the purposes of the Copyright Act, BBK's allegations of the Defaulting Defendants' willful infringement of thirteen copyrighted works, and the Defaulting Defendants' failure to defend themselves, the Court recommends that BBK be awarded attorney's fees under 17 U.S.C. § 505.

Turning to the Lanham Act, district courts may award attorney's fees to the prevailing party "in exceptional cases." 15 U.S.C. § 1117(a). The Ninth Circuit has found that, generally, cases are exceptional "when the infringement is malicious, fraudulent, deliberate or willful." *Gracie v. Gracie*, 217 F.3d 1060, 1068 (9th Cir. 2000) (quotation omitted). "In the context of a default judgment, the Ninth Circuit has upheld awards of attorneys' fees 'solely because, by entry of default judgment, the district court determined, as alleged in [plaintiff's] complaint, that [defendant's] acts were committed knowingly, maliciously, and oppressively, and with an intent to . . . injure [plaintiff].'" *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1086

1    (citing *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008) (citation and

2    internal quotation marks omitted)).

3          Here, BBK is the prevailing party as the Court has entered default against the Defaulting

4    Defendants. Moreover, BBK has alleged that the Defaulting Defendants' willfully infringed

5    BBK's trademark. ECF No. 76 at 38. The Court must take these allegations as true, and,

6    accordingly, recommends that BBK be awarded attorney's fees under 15 U.S.C. § 1117(a).

7          Next, the Court must calculate the amount of attorney's fees to be awarded. *See The*

8    *Traditional Cat Ass'n, Inc. v. Gilbreath*, 340 F.3d 829, 832–33 (9th Cir. 2003). Reasonable

9    attorney's fees are based on the "lodestar" calculation set forth in *Hensley v. Eckerhart*, 461 U.S.

10   424, 433 (1983). *See Fischer v. SJB-P.D., Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000). The court

11   must first determine a reasonable fee by multiplying "the number of hours reasonably expended

12   on the litigation" by "a reasonable hourly rate." *Hensley*, 461 U.S. at 433. Next, the court decides

13   whether to adjust the lodestar calculation based on an evaluation of the factors articulated in *Kerr*

14   *v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).

15         The *Kerr* factors are:

16   (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6)

17   whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience,

18   reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in

19   similar cases.

20   *Id.* Factors one through five are subsumed in the lodestar calculation. *See Morales v. City of San*

21   *Rafael*, 96 F.3d 359, 364 n.9 (9th Cir. 1996). Once calculated, the "lodestar" is presumptively

22   reasonable. *See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711,

23   728 (1987). Only in "rare and exceptional cases" should a court adjust the lodestar figure. *Van*

24   *Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000) (internal quotations

25   omitted).

26         Here, BBK seeks only $10,000.00 in attorney's fees against each of the Defaulting

27   Defendants. ECF No. 134 at 8–9. As stated in the Declaration of J. Alex Grimsley, BBK's

28   attorney's fees relating to the entries of default judgment against each of the Defaulting

1   Defendants far exceed the $10,000 requested. ECF No. 135 at 4–5. In the supplemental

2   Declaration by John L. Krieger, Mr. Krieger states that the number of hours spent on obtaining

3   default, including preparing the initial motion for default judgment against Florida One (which

4   the motions against BOPL and AIMS are based on) involved approximately 105 hours. ECF No.

5   146 ¶ 7. Mr. Krieger further states that the hours spent obtaining default judgment against BOPL

6   are approximately 40 hours, and the hours spent obtaining default judgment against AIMS are

7   approximately 20 hours. *Id.* The negotiated partner rate for this work was $595.00 per hour until

8   November 2023, after which it was increased to $695.00 per hour. *Id.* ¶ 8. Even assuming the

9   lowest hourly rate for this work, the lodestar calculation is as follows: $62,475.00 as to Florida

10  One, $23,800.00 as to BOPL, and $11,900.00 as to AIMS. *Id.* ¶¶ 7–8.

11      The $10,000 sought against each Defaulting Defendants is reasonable. Though the hourly

12  rate is slightly higher than rates awarded in this district, BBK seeks less than the lodestar amount.

13  *See Smith & Wesson Brands, Inc. v. SW. N. Am., Inc.*, No. 2:22-cv-01773-JCM-EJY, 2023 U.S.

14  Dist. LEXIS 197554, at *6 (D. Nev. Nov. 3, 2023) (approving rate of $550 per hour).

15  Additionally, though the Court has considered the *Kerr* factors, they do not support any

16  adjustment. *See Van Gerwen v. Guarantee Mut. Life Co.,* 214 F.3d 1041, 1045 (9th Cir. 2000)

17  (explaining that courts should only adjust the lodestar figure in "rare and exceptional cases.").

18  Indeed, the total amount sought by BBK is considerably lower than the lodestar amount, which is

19  presumptively reasonable. Therefore, the Court recommends that BBK's request for attorney's

20  fees be granted.

21  **IV.    CONCLUSION**

22      IT IS THEREFORE RECOMMENDED that Plaintiff's Renewed Motion for Default

23  Judgment as to AIMS Group USA Corporation a/k/a AIMS Group USA, Inc. (ECF No. 138) be

24  GRANTED.

25      IT IS FURTHER RECOMMENDED that AIMS Group USA Corporation a/k/a AIMS

26  Group USA, Inc., be found individually liable to Plaintiff BBK Tobacco & Foods, LLP in the

27  amount of $1,225,566.44 for disgorgement of profits.

28

IT IS FURTHER RECOMMENDED that Plaintiff's Renewed Motion for Permanent Injunction as to AIMS Group USA Corporation a/k/a AIMS Group USA, Inc. (ECF No. 140) be GRANTED consistent with this report and recommendation.

IT IS FURTHER RECOMMENDED that Plaintiff's Renewed Motion for Entry of Default to Address Joint and Several Liability and Other Matters (ECF No. 134) be GRANTED.

IT IS FURTHER RECOMMENDED that Defendant Florida One Wholesale Inc. be found individually liable to Plaintiff BBK Tobacco & Foods, LLP for attorney's fees in the amount of $10,000.00.

IT IS FURTHER RECOMMENDED that Defendant Brocone Organic Private Limited be found individually liable to Plaintiff BBK Tobacco & Foods, LLP for attorney's fees in the amount of $10,000.00.

IT IS FURTHER RECOMMENDED that AIMS Group USA Corporation a/k/a AIMS Group USA, Inc., be found individually liable to Plaintiff BBK Tobacco & Foods, LLP for attorney's fees in the amount of $10,000.00.

IT IS FURTHER RECOMMENDED that the following Judgment, consistent with the above, replace and supersede the Judgment entered by the Clerk of Court on March 18, 2024, against Defendant Florida One Wholesale Inc. (ECF No. 123) and the Judgment entered by the Court on April 5, 2024, against Defendant Brocone Organic Private Limited (ECF No. 130):

> IT IS RECOMMENDED that Judgement be entered in favor of Plaintiff BBK Tobacco & Foods, LLP against Defendant Florida One Wholesale Inc. in the amount of $887,181.47 (disgorgement of profits and attorney's fees).

> IT IS RECOMMENDED that Judgment be entered in favor of Plaintiff BBK Tobacco & Foods, LLP against Defendant Brocone Organic Private Limited in the amount of $915,909.74 (disgorgement of profits and attorney's fees).

> IT IS RECOMMENDED that Judgment be entered in favor of Plaintiff BBK Tobacco & Foods, LLP against AIMS Group USA Corporation in the amount of $1,235,566.44 (disgorgement of profits and attorney's fees).

1    IT IS RECOMMENDED that, in addition to the amounts set forth above,

2    Judgment be entered in favor of Plaintiff BBK Tobacco & Foods, LLP against

3    Defendants Florida One Wholesale Inc., Brocone Organic Private Limited, and

4    AIMS Group USA Corporation a/k/a AIMS Group USA, Inc., jointly and

5    severally in the amount $5,673,300.00 (corrective advertising damages and

6    statutory damages).

7

8    DATED this 25th day of November 2024.

9

10                                                        _____

11                                                        BRENDA WEKSLER
                                                          UNITED STATES MAGISTRATE JUDGE

12

13                                    **NOTICE**

14        This report and recommendation is submitted to the United States district judge assigned

15    to this case under 28 U.S.C. § 636(b)(1). A party who objects to this report and recommendation

16    may file a written objection supported by points and authorities within fourteen days of being

17    served with this report and recommendation. Local Rule IB 3-2(a). Failure to file a timely

18    objection may waive the right to appeal the district court's order. *Martinez v. Ylst*, 951 F.2d 1153,

19    1157 (9th Cir. 1991).

20

21

22

23

24

25

26

27

28